NOAH PRESTON *v.* ERASTUS F. WHITCOMB.

CHITTENDEN,
January,
1839.

An award, directing that W. " shall make and *will execute* a *good* and *au-* " *thentic deed* of conveyance" of certain lands to P. by a given day, refers merely to the validity and sufficiency of the deed, in point of law, and not to the title to be thereby conveyed, and is satisfied by the execution of such a deed, as is effectual to convey all the right and title which W. had in the premises at the date of the award.

P. cannot give in evidence, in an action against W. for the non-performance of the award, that W. had no title and no seisin; or that there was an adverse possession in another.

An award which puts an end to the original controversy, and is within the terms of the submission, is a *conclusive* bar to an action on the original matter.

Where W. by the award of arbitrators, is to give P. a good authentic deed by a given day, and at the same time give him possession of the premises, and upon the tender of the deed, at the day, P. refuses to accept it, W. is excused from going further and tendering the possession, if that would otherwise have been necessary.

THIS was an action of assumpsit, founded upon the following submission and award:

" Whereas, divers difficulties and disagreements have arisen " between us, in relation to a quantity of hay, and relative to a " certain piece of land, part of the old Cox Farm, in Richmond, " and divers suits have been commenced, and are now pending, " relative to said hay; therefore, to end all which difficulties " and disagreements, together with the said suits, we hereby " agree to submit the same, and all matters of difficulties, ac-" tions and causes of actions, to the arbitrament and deter-" mination of Edward Jones and Nathan Fay jr., with full " power to award the transfer of the title to the said land, by " deed or otherwise, and the price and quantity of the said " hay, and as to the bills of cost which have arisen in said " suits, and all other things, as to law and equity shall apper-" tain; the report of whom, to be made out as soon as may " be, to be final and conclusive between the parties, and ei-" ther party, revoking this submission, or who shall neglect " and refuse to perform the award made in the premises, shall " pay to the other party five hundred dollars, in lieu of other " damages. Dated at Richmond this 13th day of March, A. " D. 1837.

ERASTUS F. WHITCOMB,
NOAH PRESTON."

The arbitrators awarded, among other things, as follows: " We, the undersigned, arbitrators between the parties " aforesaid, after duly examining the evidence in the case, " have come to the following results, and do hereby a- " ward, that the said Erastus F. Whitcomb shall make and " well execute a good authentic deed of conveyance of " all the land that the said Erastus F. holds by deed of con- " veyance from Samuel Martin, being a part of the old " Cox farm. Said deed to be made out and delivered to " the said N. Preston, and possession given him of the prem- " ises, on or before the first day of April next.

" And it is further awarded, that on the delivery of the said " deed, by the said Erastus F. Whitcomb, to the said Noah " Preston, of the before mentioned tract of land, the said " Preston shall pay to the said E. F. Whitcomb, the sum of " $277,36.

EDWARD JONES, ⎱ *Arbitrators.*
NATHAN TAYLOR. ⎰

March 13, 1837."

The plaintiff, in his declaration, after reciting the submission and award, and averring readiness to perform all things, on his part to be done and performed according to the terms of the award, alleged that the defendant did not make out, execute and deliver to the plaintiff the deed in said award mentioned, &c., nor give the plaintiff possession of the land awarded, and claimed to recover the said sum of five hundred dollars. The declaration also contained the common counts in indebitatus assumpsit.

The defendant pleaded the general issue.

On the trial in the county court,

The defendant offered to prove a performance of the a-ward, and for that purpose offered a deed from the defendant to the plaintiff, of the land awarded, with evidence tending to show, that it was tendered to the plaintiff, agreeably to the award, but that the plaintiff refused to accept it, on the ground that it did not convey the title to the land mentioned in the submission and award.

To this the plaintiff objected, and contended that it was

incumbent on the defendant to show that he had a legal title in fee to the land in dispute, in order that his deed should operate as a performance. But the court held, that if the deed was effectual to convey all the right and title which the defendant had at the date of the award, it was a sufficient performance, and overruled the objection.

The plaintiff then offered to show, that the defendant had not the title to said land, and consequently that the deed aforesaid was wholly inoperative ; and also that other persons were in possession of said land, holding, and claiming to hold, adversely to the defendant, at the date of said deed, and ever since ; and that defendant had never given possession of said land to the plaintiff; and also to show, that the arbitrators' intention was, that the deed should convey all the land described in the deed of Samuel Martin to the defendant, all which testimony was rejected by the court.

The plaintiff then insisted that the award was void, and offered to introduce evidence under the other counts of his declaration ; but the court rejected it, sustaining the award, and directed a verdict for the defendant, which was found accordingly.

To all which decisions of the county court, the plaintiff excepted.

*C. D. Kasson* for plaintiff.

I. The submission gave the arbitrators power to award a transfer of the *title* of the land, by deed or otherwise.

The intention of the parties to a writing is to be so construed, that all the parts may operate, if possible.—*Jackson ex dem. Troup* v. *Bodget,* 16 *Johns. Rep.* 172.

II. The arbitrators have substantially awarded a transfer of the *title,* although that word is not employed by them, as all things, comprehended in the word, are, by the award, to be done by the defendant. He is to give a deed of conveyance and the possession of the land, the two requisites of a perfect title.

1. The intention of the parties and arbitrators is to prevail over legal technicalities. Sug. Vend. 21. 1 Saund. Rep. 215, *note (2.)* Bull. N. P. 164. *Jones* v. *Gardner,* 10 Johnson's Rep. 266. *Jackson ex dem. Ludlow* v. *Myers,* 3 do.

395. *Clute* v. *Robinson*, 2 do. 597. *Gazley* v. *Price*, 16 do. 267. *Parker* v. *Parmelee*, 20 do. 130. *Stow* v. *Stevens*, 7 Vt. Rep. 30. *New Orleans* v. *United States*, 10 Peters' Rep. 731. *Pratt* v. *Hackett*, 6 Johns. Rep. 14. Cald. Arb. 98.

2. In no case can the defendant be said to have performed, unless he have given the plaintiff the possession, *North* v. *Johnson*, D. Chip. Rep. 131.

Nor does the plaintiff's refusal to receive the deed tendered, avail the defendant. *Clute* v. *Robinson*, 2 Johns. Rep. 597. *Van Eps* v. *City of Schenectady*, 12 do. 440. *Stow* v. *Stevens*, 7 Vt. Rep. 30.

III. Whatever may be the construction of the award, the plaintiff had a right to show matter in avoidance of the deed tendered by defendant. 11 Johns. Rep. 587. *Frisby* v. *Hoffnagle*, 11 Johns. Rep. 50. *Van Eps* v. *City of Schenectady*, 12 do. 440. *Jones* v. *Gardner*, 10 do. 266. *Clute* v. *Robinson*, 2 do. 597.

*W. P. Briggs*, for defendant.

1 The deed tendered by the defendant was a literal fulfilment of the award.

2. Had the plaintiff accepted the deed and paid the money, as he was bound to do by the terms of the award, and there was a defect in the title, he might have resorted immediately to the covenants in the deed.

3. The defendant was under no legal or moral obligation to yield the possession of the premises awarded to the plaintiff, unless he had his money ; and a tender of the deed was, in law, a tender of the possession.

The opinion of the court was delivered by

Bennett, J.—The first question, presented for our consideration, is as to the materiality of the facts offered to be proved by the defendant in the court below, and by the court excluded.

The propriety of the decision below must depend upon what we consider the sound and legal construction of the award. The arbitrators, among other things, award, "that the said Erastus *shall make* and *well execute* a good, *authentic deed of conveyance* of all the lands that the said Erastus then held by deed of conveyance from Samuel Martin, being

a part of the old Cox farm." The words "shall make and
well execute a good, authentic deed," relate merely to the
validity and sufficiency of the deed, in point of law, to con-
vey whatever right the defendant then had in the premises.
It is difficult to attach to them any other relation, without do-
ing violence to language. In construing awards, it is true,
the intention of the arbitrators is to be the pole-star; but
whence is that intention to be learned? Language, by com-
mon consent, is made the representative of ideas, and is to
be understood in its ordinary and usual acceptation, unless
you are thereby led to absurd consequences. If the meaning
of the words is obvious and free from ambiguity, both in their
application and meaning, I know of no rule of law that will
authorize a court to set aside their obvious import, and give
them a tortured construction. A strained, unnatural construc-
tion of language is only to be tolerated, when you are involv-
ed in absurdity in understanding it according to its usual and
approved acceptation. The award, in this case, points direct-
ly to the deed itself. " Shall make and well execute" what?
A good, authentic deed of conveyance. The defendant is re-
quired to make and well execute the deed, and it is to be a
good, authentic deed. It is manifest that the words "good,
authentic" cannot alter the construction. To make them re-
fer to the title to be conveyed, would be a forced, unnatural
meaning. They can only designate the species of the deed
to be given, and must be satisfied, if the deed is such as
they require. The words, which follow in the award, can on-
ly be descriptive of the premises to be conveyed. This view
of the case is conformable to adjudged cases. In the case of
*Van Eps* v. *Corporation of Schenectady*, 12 Johns. Rep.
436, the court held that an agreement that "a deed should be
executed," imposed no greater obligation than that the party
should execute a conveyance or assurance of the property;
and that a quit-claim was a compliance with the contract,
though there was an adverse possession as to a part of the
lands, and the purchaser demanded a warranty deed, as his
indemnity against such possession. The case of *Gazley* v.
*Price*, 16 Johns. Rep. 267, is much like the present. In that
case, the plaintiff brought covenant to recover the considera-
tion agreed to be paid for lands, and on his part he had cove-
nanted with the defendant to give him "a good and sufficient

deed of the premises," and averred performance in his dec-
laration.    The defendant pleaded that, at the time of the ex-
ecution of the deed, the plaintiff was not seized of a good,
indefeasible estate, and had not good and lawful right to con-
vey, &c.    To this there was a demurrer, and the court held
the plea insufficient ; and this upon the ground that the cove-
nant was satisfied if the deed was *good* and *sufficient* to con-
vey the premises ; and that these words had no reference to
the title, but only to the species of the deed to be given.    In
the case of *Parker* v. *Parmelee*, 20 Johns. R. 130, the plaintiff
brought covenant, and on his part he covenanted, that on
the performance of the covenants on the part of the defend-
ant, "he *would execute a good warranty deed of convey-
ance of the premises ;*" and in his declaration he averred his
readiness and willingness to execute such deed, upon the de-
fendant's paying such sum as he had covenanted to pay, and
then traversed such payment.    The defendant pleaded, that
at the time he was to make the payment to the plaintiff, he,
the plaintiff, had *no seizin,* or *right,* or *title in the premis-
es ;* and to this there was a demurrer.    The plea was held in-
sufficient upon a full review of the authorities.

   In Massachusetts the same principle has been decided.    In
*Aiken* v. *Sanford*, 5 Mass. R. 494, the plaintiff brought debt
on a bond.    The condition required the defendant to con-
vey certain premises to the plaintiff by a good and sufficient
deed of warranty.    The defendant pleaded, that on the 27th of
June 1806, he executed such deed, and, on the 9th September
thereafter, he tendered the deed to the plaintiff, who refused
it.    PARSONS, Ch. J. said the deed, which the defendant de-
scribed in his plea in bar, was unquestionably such an one as
was intended to have been given.    At a subsequent term, in the
same case, the court said "the import of the words in the
condition of the bond, is confined to the form of the deed
and its execution and not to the title."

   The court do indeed add "if the deed was of a proper
form and regularly executed, and the grantor was seized; so
that the land was conveyed by it, the condition was in this
case performed."    But it is to be observed, that if the court
are correct in saying that the words of the covenant in the
condition of the bond are to be referred to the form of the

deed and its execution, and not to the title, then the seizin of the grantor is immaterial. The necessity of a seizin was not a point before the court, and this remark, and what is also said to have been afterwards remarked by the court, was extrajudicial.

CHITTENDEN,
January,
1839.

Preston
v.
Whitcomb.

The cases in New York are express adjudications that *non seizin* is no good plea; and that, too, in cases where the payment of the purchase money and the execution and delivery of the deed were to be at one and the same time. It may be regarded as settled law, that a conveyance in fee does not, *ipso facto*, imply a warranty of title. The principle of "*caveat emptor*" applies to the purchaser, and he must at his peril see that he has a good title, or such an one as he is willing to rely upon. So in this case, it is not to be presumed that the arbitrators or the party were regardless of the principle "*caveat emptor*."

The case of *Stow v. Stevens*, 7 Vermont Reports 27, was an action of debt on bond, the consideration of which was, if the defendant should "execute and deliver to the plaintiff a good and valid deed, with the usual covenants of warranty," on the 1st day of April 1833, upon the plaintiff's paying a given sum in money and executing his notes for a further sum, of certain lands, then the bond was to be void.— The defendant pleaded in bar, the non-payment of the money and the non-execution and delivery of the notes and averred his readiness to have executed the deed according to the condition of bond, if the plaintiff had performed on his part.

The plaintiff replied, that at the time of the execution of the bond, the defendant had good title to the lands in question, and that, before the 1st of April, 1833, the defendant sold and conveyed the lands to another person, and has not since had any title to the same. To this replication there was a demurrer, and the court held it good in substance, though bad in form, it not containing an averment of the *readiness* and *willingness* of the plaintiff to have performed the covenants on his part. It is to be observed, this replication alleges that the defendant had good title to the premises, when he entered into the covenant, but, before the time at which the plaintiff was to pay the further sum of money and execute his notes, as specified in the bond, the defendant

had conveyed away the premises, and thereby disabled him-self to give such title as he had when the covenant was made. This was unquestionably, *ipso facto*, a breach of the covenant, on the part of the defendant, and hence a tender of a warranty deed, with the usual covenants, after this, would be no performance. See 1 Shep. Touch. 172, 381. Coke Littleton, 220, 221. 13 Johns. Rep. 404. The case is undoubtedly correctly decided, and, as applied to that case, it may be well said, that the execution and tender of a warranty deed by the defendant, *after he had conveyed away his title*, was not a performance of his covenant.

In the case of *Clute* v. *Robinson*, 2 Johns. R. 595, we have this language from Chancellor Kent: "a covenant to execute a good and sufficient deed, does not mean a conveyance good in point of form. That would be a covenant without substance. But it means an operative conveyance, one that carries with it a good and sufficient title." As applied to that case, the chancellor's language was correct, and no doubt the case was well decided. It is, however, to be remarked, it was a case in chancery. Robinson had filed his bill against Clute to foreclose a mortgage executed by Clute to one Rawlins, and by him assigned to Robinson. At the time the mortgage was given, Rawlins executed to Clute a bond of defeasance, conditioned, if Clute should execute to Rawlins, a "good and sufficient deed of certain premises," by a certain day, then the bond and mortgage by Rawlins should be surrendered up to Clute. It appeared, by the answer of Clute, that the bond and mortgage were given by him to Rawlins on account of his not being able then to give to him a good title to the lands specified in the bond of defeasance from Rawlins to him, and for the purpose of securing a perfect title to the same. The court, indeed, held in that case, that the tender of a warranty deed by Clute, the title not then being complete in him, but in the same situation as when the bond of defeasance was executed, was no satisfaction of the bond and mortgage.

But, it is to be remembered, that was a decision in chancery, and, as applied to that case, the language of the court was undoubtedly correct. If a party calls upon a court of chancery to enforce a specific execution of an agreement for the

acceptance of a conveyance of a piece of land, under a cov-
enant to execute a good and sufficient deed, and to compel
the payment of the purchase money, who can doubt it would
be a good answer in chancery, that the party had no title? It
appearing, in that case, that at the time of the decree the
defendant had a good title, he was permitted to make the
conveyance, upon making compensation for the delay. The
case of *Judson* v. *Wass*, 11 Johns. R. 525, was assumpsit,
to recover the purchase money agreed to be paid on the sale
of real estate. The court say, that, as the plaintiff was not in
a situation to convey a title, the defendant was not bound to
carry into effect any of the stipulations on his part, and that
the plaintiff was bound by his stipulation to execute a deed,
with covenants of warranty, subject only to certain quit
rents, and that that meant, he should have the power to give
a deed that would carry with it an indefeasible title to the
premises, subject only to the quit rents, and that the condi-
tions of the sale, specifying only the quit rents, exclu-
ded the idea that there was to be any other incumbrance.
That case was evidently decided on the ground of failure of
consideration; and, in the action of assumpsit, it is, as a
general rule, perfectly competent for the defendant to set up
a failure of consideration as a complete defence. In giving
their opinion, the court say, "it is now perfectly settled,
that where, by the conditions of the sale, the vendee is re-
quired to deposit a part of the purchase money, and the ven-
dor is unable to convey a good title, pursuant to the articles,
the vendee may disaffirm the contract, and recover back his
deposit." There was not only a failure of consideration in
that case, but, in fact, a fraud upon the purchaser, in sup-
pressing the notice of this outstanding incumbrance at the
time of the sale. By the submission of the parties, in the
case now before the court, it seems that divers difficulties
had arisen between them, and among others a dispute relative
to this piece of land, but of the nature of this dispute we
are not informed, neither is it material; and, to put an end
to this dispute and all others, this submission is made, and
the arbitrators were clothed with full powers to settle the con-
troversies, whatever they were, and to award a transfer of
the title to said premises. That the arbitrators kept within
their submission, in making the award, no one can doubt;

and no good reason is perceived why the award is not final and conclusive upon the parties. It constitutes no objection to the award, that the arbitrators were empowered to award " a transfer of the title," and did not see fit to come up fully to the very verge of their powers. It is not improbable that the matter in dispute related to the terms upon which the defendant was to convey to the plaintiff the premises in question; and " *caveat emptor*" well applies to the case. This award puts an end to the original controversy, and is as conclusively a bar to an action founded thereon, until set aside, as a judgment of any other court. If the award is not performed, the parties may take their remedies upon it, and it is conclusive upon their rights, and cannot be attacked collaterally, unless the objections are such as to show that, in point of law, no valid award was ever made. This award is to be construed and have effect according to the intentions of the arbitrators at the time; and that intent is to be mainly, if not wholly, gathered from the award; and more especially in cases where there is no ambiguity in the language. It is true, as in Teat's case, Cro. Eliz. 7, where the literal and obvious understanding of the language would lead to manifest absurdity, we are to hold that a case coming within the letter does not come within the spirit. In that case, the contract was to *deliver up* an obligation by a particular day. Before the day the party sued the obligation, *obtained judgment*, and then surrendered it up. No one could suppose this would be a performance of the contract. When the obligation had passed *in rem judicatam*, it ceased to have any value, and the surrender was then an idle ceremony. The obligation, when surrendered, was a different thing from what it was when the contract of surrender was made; and this case may be analogous to the case, where a person contracts to execute and deliver a good and sufficient deed, of a piece of land, by a given day, and, before that day, conveys the land to another. The execution of the deed, after the sale, most assuredly would not be a compliance with the contract. The one does not part with, nor the other receive, what was expected; and the principle of *caveat emptor* does not apply. It is not pretended the defendant had done any act to affect his title after the arbitration; and no doubt the award contemplated

a conveyance with reference to his then existing title. This is the plain and obvious import of the language, and we are not permitted to torture it into in a different meaning. The evidence, offered to show the adverse possession, and which the court excluded, must depend on the same principle. Such extrinsic matter would not affect the validity of the deed as an instrument possessing the legal requisites of a conveyance, and, if made void for that cause, the grantee must take his remedy on the covenants in the deed, or else make use of the grantor's name, to dispossess such wrong doer. The plaintiff, by his refusal to accept the deed of the defendant, thereby excused him, if it had been otherwise necessary, from going further and tendering the possession. The law never requires a nugatory act to be performed, and when the plaintiff gave the defendant notice that he would not accept the deed, this was a renunciation of all rights incident to and growing out of the deed. The exclusion of the parol evidence, to explain the award, was manifestly correct ; and, on the whole, we think the decisions below are founded in principle and sustained by authority, and they are, consequently, affirmed.

CHITTENDEN,
*January,*
1839.

Preston
*v.*
Whitcomb.

REDFIELD, J. dissenting, on the ground that the offer by the plaintiff to show an adverse possession was admissible, and that that fact, if proved, would have shown the deed not to have been a "good authentic" deed, but would have rendered it wholly inoperative ; and that, as the defendant was bound by the award, not only to execute the deed but to deliver possession, the terms "good authentic deed" should be construed to imply, at the least, a deed, operative to convey the title, which the defendant had at the time the award was made.