Georgette Messenger and David S. Shapiro, Executors of the Last Will and Testament of Elmer Messenger, Deceased, and Georgette Messenger, Individually, Plaintiffs-Appellees, v. Milton D. Rutherford, Defendant-Appellant.

Gen. No. 53,832.

First District, First Division.

October 13, 1970.

Myer H. Gladstone, of Chicago, for appellant.

Morgan, Lanoff, Cook & Madigan, of Chicago (Samuel. M. Lanoff and John A. Cook, of counsel), for appellees.

MR. JUSTICE ADESKO delivered the opinion of the court.

This appeal is from a judgment order of December 13, 1968, wherein the trial court made the following disposition: Entered partial summary judgment against the defendant in favor of plaintiffs-executors in the sum of $15,185; entered summary judgment against the defendant in favor of Georgette Messenger, individually, in the sum of $2,903.78; granted the plaintiffs' motion to strike certain portions of defendant's amended answer; and allowed the executors to withdraw a portion of their complaint over defendant's objections. Defendant seeks to reverse the above portions of this order. The judgment order provided that the remaining issues of material facts be tried as contested issues.

This cause was begun in February of 1963, by the executors of the Estate of Elmer Messenger and by his widow for accounts stated to the defendant which were unpaid. The complaint alleged that the deceased and defendant had entered into separate oral agreements, from July 1958 to November 1958, relating to five oil and gas wells in the State of Oklahoma. These wells were known as Primm No. 1, Carder No. 1, Lloyd No. 1, Carpenter No. 3 and Sherry No. 1. Plaintiffs alleged that the agreements allowed defendant to purchase an undivided fractional interest for a fixed sum and if a productive well were discovered, then the defendant was to pay a fixed sum for original equipment, a proportionate share of operating costs and additional equipment expenses, and the defendant would receive a proportionate share of the income from the producing well. Plaintiffs alleged that prior to Elmer Messenger's death, a just and true account was stated between the deceased and the defendant in the sum of $29,000 for the agreed fixed purchase price of defendant's fractional interest in these five wells. The executors made an additional claim of $1,525.71, as an account stated for defendant's proportionate share of operating expenses incurred from May 1, 1960 to March 31, 1961. This claim covered eleven wells, among which were five wells of the first claim included. The individual claim of Georgette Messenger, wife of the deceased, was for an account stated against the defendant for a proportionate share of the operating expenses of twelve wells from April 1, 1961 to March 31, 1962. This claim amounted

to $2,903.78. All of these claims were evidenced by statements to the defendant which were attached as exhibits to the complaint.

Defendant's answer admitted the oral agreements with the deceased, denied that defendant was to pay a fixed sum for his fractional interest in the wells and denied that he was to pay a proportionate share of the actual expenses of drilling, completing and equipping the wells. The answer further stated that by virtue of the oral agreements, the deceased was made defendant's agent and that deceased owed defendant a fiduciary duty. It also alleged that the deceased failed to disclose his ownership and that of his wife and daughter in these wells; that deceased and his family failed to pay their proportionate share of expenses; that the deceased breached the several oral agreements by not charging the defendant for his proper portion of the actual costs; that the stated accounts overcharged the defendant by various amounts and that defendant's actual share of the cost was an amount certain. Thus, defendant's answer admitted an amount owed on the account stated but also claimed an amount as a counterclaim for overcharges on the five wells. No answer was made to the other claims asserted in the complaint.

Along with the answer, the defendant filed a counterclaim alleging that the deceased had breached other oral agreements with respect to the twelve other well drilling operations (none of the five wells of the executors' first claim were involved), by overcharging the defendant by approximately $65,000. By reason of these overcharges, the defendant claimed a net indebtedness from the plaintiffs.

The plaintiffs moved to dismiss the counterclaim on the basis that the defendant's claims were barred by the provision of the Probate Act, section 204 (Ill Rev Stats, c 3, § 204 (1969)). It appears that letters testamentary were issued on April 24, 1962, and the nine-month period for filing claims expired on January 24, 1963. Plaintiffs also moved to strike defendant's answer and counterclaim. After a full hearing, the trial court on October 13, 1965, dismissed defendant's counterclaim and struck cer-

tain portions of defendant's answer. The defendant appealed this order and this court affirmed the dismissal of the counterclaim in Messenger v. Rutherford, 80 Ill App 2d 25, 225 NE2d 94 (1967). In that appeal, the defendant contended that deceased's fraud tolled the application of section 204 of the Statute as to filing of claims. Defendant did not argue his right to counterclaim against after-discovered assets of the estate. This court held that the counterclaim was barred by section 204. That part of the order striking portions of defendant's answer was not considered since we concluded it was not a final and appealable order.

Thereafter, the plaintiffs moved for summary judgment on September 27, 1967, seeking a judgment order for the amounts which defendant admitted owing on the five wells and for recovery of the amounts that defendant did not deny in his answer. While the plaintiffs' motion was pending, the defendant obtained leave to file an amended answer. The amended answer contained allegations similar to those in the original answer. In the first four paragraphs, the defendant again asserted his contention as to his agreement to pay a proportionate share of the actual drilling costs of the five wells and that deceased was the defendant's agent and owed a fiduciary duty to defendant, which the deceased breached. Defendant repeated allegations of overcharges made by deceased and again admitted his indebtedness for certain sums on the five wells that were subjects of the 1958 oral agreements. There were some minor differences which are not relevant to the issues. The fifth paragraph alleged that the deceased improperly collected net income from these five wells, of which the defendant claimed a portion. The remaining paragraphs of the defendant's amended answer alleged that in an accounting with the defendant the plaintiffs owed the defendant the sum of $32,448. This figure was the result of alleged breaches of the oral contracts by deceased regarding the twelve drilling operations that had been asserted originally in defendant's counterclaim. These allegations were substantially similar to the counterclaim and the defendant asserted that plaintiffs owed him a net indebtedness over and above the amounts they

admitted owing as to the five wells of the executors' original complaint. Defendant made no reply to the individual claim of Georgette Messenger.

On December 4, 1967, plaintiffs filed a motion to strike the amended answer. Plaintiffs alleged that those paragraphs dealing with the overcharges on the five wells that were the first claim of an account stated contained allegations of other co-owners' interests, their respective contributions and other matters unrelated to issues of this suit. The remaining paragraphs were sought to be stricken on the ground that they were matters of setoff and counterclaim which were barred by the previous order of October 13, 1965 and its subsequent affirmance by this court on the previous appeal. Plaintiffs concluded by seeking judgment on the amounts admitted by the defendant.

The defendant filed an affidavit in opposition to the plaintiffs' motion for summary judgment, which contained substantially the same averments found in the defendant's amended answer. The defendant persisted in asserting his right based on the fraud of the deceased as to the five wells of plaintiffs' first claim and that this alleged fraud allowed defendant to assert his claim for an accounting as to the other twelve wells. Plaintiffs reasserted their right to summary judgment by an additional affidavit asserting that defendant had admitted his indebtedness of $15,185 in both the amended answer and affidavit. Further, plaintiffs stated that the defendant's contention in his amended answer and affidavit as to the amounts claimed from plaintiffs on the other twelve wells were barred by section 204 of the Probate Act, as was previously determined by the trial court and affirmed on appeal.

On March 5, 1968, the plaintiffs filed a motion to withdraw two paragraphs of the original complaint. This was the executors' claim of $1,525.91, for defendant's proportionate share of the operating expenses of various wells during May 1, 1960, to March 31, 1961. Plaintiffs also renewed their motion for summary judgment and filed an additional affidavit supporting said motion. The defendant filed additional counteraffidavits and objections to

plaintiffs' various motions. In one of defendant's affidavits he alleged that he had a right to assert a counterclaim until a determination was made as to whether the deceased's estate contained any after-acquired assets not included in the inventory filed in Probate Court. By way of affidavit, plaintiffs asserted that there were no non-inventoried assets of the deceased's estate.

█ Upon this state of the record, the trial court entered the judgment order of December 13, 1968. The defendant contends that the trial court acted inconsistently and ambiguously in striking paragraphs 4(d) through 4(h) of the amended answer, which asserted his claim for overcharges as to the executors' claim upon the five wells covered by the 1958 oral agreements. It appears from the record that the issues raised by these paragraphs are part of the claim as to the controversy over the terms of the oral agreements and the question of whether defendant was charged the proper amount on said agreements. By the trial court's order, that claim is still pending except for those amounts for which partial summary judgment has been rendered. We are of the opinion that that part of the order dismissing paragraphs 4(d) through 4(h) is not a final and appealable order.

Even though we will not consider the merits of striking that portion of defendant's answer, certain contentions of the defendant merit this court's consideration. Defendant argues that the language of the order "that Paragraphs 4, 4(d), 4(c), 4(f), 4(g) and 4(h) of the amended answer be and they are hereby stricken" meant that the order disposed of all of that paragraph. We are convinced that the inclusion of "Paragraph 4" was a mistake. Plaintiffs' motion to strike only sought to eliminate paragraphs 4(d) through 4(h) of the amended answer. Furthermore, in the order of December 13, 1968, the trial court stated that one of the issues was "if the agreement was as alleged by the defendant, the defendant was billed an appropriate portion of the cost so applicable to the wells set out in said paragraphs." Defendant argues this language demonstrates inconsistency. However, the trial court also found that the defendant's amended answer put in issue the terms of the said oral agreements. These

allegations are contained in paragraphs 3, 4(a) through 4(c). This finding demonstrates that paragraphs 4(a) through 4(c) remained at issue by the trial court's ruling and were not stricken by the judgment order.

■ ■ Another inconsistency alleged is that in granting plaintiffs' motion to strike defendant's answer (as to paragraphs 4(d) through 4(h), and then granting the executors' summary judgment for the debts admitted in those paragraphs, the trial court gave plaintiffs the benefit of those allegations to which they were not entitled if the amended answer were stricken. We find no merit in this contention. Defendant's allegations made in his amended answer and affidavit are judicial admissions. The record is uncontradicted that as to the oral agreement for the five wells upon which the executors predicated a claim for an account stated the defendant admitted by verified pleadings that certain sums were owed on an account. These statements stand as judicial admissions upon which the plaintiff sought partial summary judgment. The rule is that "allegations contained in a pleading are judicial admissions and are conclusive against the pleader provided the pleading has not been amended, abandoned or withdrawn." Precision Extrusion, Inc. v. Stewart, 36 Ill App2d 30, 50, 183 NE2d 547 (1962). Defendant's admission of debt in the amount of $15,185.00 by his pleadings requires no proof by the plaintiffs. Rosbottom v. Hensley, 61 Ill App2d 198, 209 NE2d 655 (1965) ; Hudson v. Augustine's, Inc., 72 Ill App 2d 225, 218 NE2d 510 (1966).

■ Defendant also argues that the trial court erred in entering summary judgment since the defendant had imposed an arguable defense, made in good faith. Thus, defendant contends the plaintiffs' right to summary judgment was not free from doubt. The purpose of the summary judgment is to determine whether an issue of fact exists between the parties. Sampson Co. v. Mandel Bros., Inc., 3 Ill App2d 92, 95, 120 NE2d 571 (1954). The statute itself provides that a party may seek summary judgment "for all or any part of the relief sought." Ill Rev Stats, c 110, § 57 (1969). Thus, our Civil Practice Act provides for partial summary judgment which is what plaintiffs

have received. The defendant has properly argued that he had a valid defense based on controverted facts. In State v. Illinois Cent. R. Co., 246 Ill 188, 92 NE 814 (1910), our Supreme Court stated, at pages 241–42:

> "A stated account is an acknowledgment of an existing condition of liability of the parties, from which the law implies a promise to pay the balance thus acknowledged to be due. . . . It may be impeached for fraud or mistake. The general rule is, that in an application to open a stated account the plaintiff must either charge fraud or state particular errors. . . . 'A person seeking to open a settled account must specify in his claim either errors of considerable extent, both in number and amount, or at least one important error of a fraudulent nature.' "

The record in this case reveals that defendant has successfully put into issue these principles discussed in the Illinois Central case, supra. However, the fact remains that defendant's pleadings have also admitted certain debts which are no longer an issue in the case. Thus, the judgment for the executors in the amount of $15,185 was correct and there is no error.

With regard to the summary judgment granted to Georgette Messenger on her individual claim of $2,903.-78, we hold that no error was committed in that ruling. The record discloses that throughout the long duration of this litigation, the defendant has not denied the allegations regarding the account stated on that claim. Accordingly, the trial judge correctly found that no issue of material fact existed on that claim and the summary judgment was properly granted.

Defendant contends that the trial court erroneously struck paragraphs 5 through 20 of the amended answer. The trial court found that the allegations were not germane and that they were barred by the prevous order of court which was affirmed in Rutherford v. Messenger, 80 Ill App2d 25, 225 NE2d 94 (1967). On that appeal, we affirmed the dismissal of defendant's counterclaim as it applied to the decedent's assets inventoried within the

nine month period following the issuance of the letter's testamentary. This court also stated, at page 29:

"Where a claim against an estate is filed and allowed after nine months from the granting of letters, the order or judgment allowing the same must be special, ordering payment only out of assets which have not been inventoried within nine months from the issuance of letters or accounted for by the administration."

The amended answer in paragraphs 5 through 20 is subject to the same limitations that we expressed with regard to the previous dismissal of defendant's counterclaim. These paragraphs of the amended answer are the same overcharges asserted by the defendant, with the addition of paragraph 5 that states defendant's claim for his share of income from certain producing wells.

Defendant argues that his amended answer and affidavit relating to the subject matter contained in paragraphs 5 through 20 pleaded a cause of action in accounting between the executors that would necessitate an opening of the account stated and justify a recovery by the defendant in excess of the executors' claim. Clearly, these claims are matters of setoff. Defendant's recovery is barred as to the assets inventoried in decedent's estate in the first nine months after issuance of letters testamentary by section 204 of the Probate Act. Defendant's only recourse would be a recovery against assets not previously inventoried in decedent's estate.

In an affidavit dated March 5, 1968, the plaintiffs asserted that no additional assets were inventoried after the expiration of the nine-month period for filing claims, that no such assets exist, that the defendant had not demonstrated the existence of any after-acquired assets and that there is no probability of discovering such assets. One of defendant's responsive pleadings alleged that defendant had the right to prove the allegations of setoff contained in the amended answer (paragraphs 5 through 20) until the probate court could determine whether or not any after-inventoried assets existed. Defendant alleged that another person had filed a petition

in probate court in that regard and that defendant also contemplated filing a similar petition to seek the return of certain assets to the decedent's estate from the executors.

This argument is now presented by defendant in this court. It begs the question. Assuming the defendant was able to prove the allegations of setoff in his amended answer, his only recovery would depend on the findings of a court that after-inventoried assets existed. Defendant's amended answer does not plead the existence of such funds. By allowing the defendant the opportunity to plead and prove the allegations of paragraphs 5 through 20 before it is determined that any funds exist for the satisfaction of that judgment would be ludicrous and a waste of judicial effort. We agree with the trial court's finding that the allegations of these amended answers were not germane to the issues and that those allegations under the present state of the record do not state a cause of action for which any recovery may be had.

Defendant urges error when the trial court allowed the plaintiffs to withdraw a portion of their complaint as to certain operating expenses allegedly unpaid by defendant. The contention is that under section 52 of the Civil Practice Act (Ill Rev Stats, c 110, § 52 (1969)), the pleading of a counterclaim means that the plaintiff cannot voluntarily dismiss without the consent of the defendant. This argument is without merit. The case of People v. American Nat. Bank & Trust Co., 32 Ill2d 115, 203 NE2d 897 (1965), declares that a plaintiff's right to voluntary dismissal is not restricted where the counterclaim fails to state a cause of action against the plaintiff. In light of our decision, regarding the dismissal of paragraphs 5 through 20, we conclude that the trial court properly allowed plaintiffs' motion to withdraw that claim.

For the reasons given, the judgment order of December 13, 1968, is affirmed.

Judgment affirmed.

BURMAN, P. J. and MURPHY, J., concur.