ALEX BLOOM, Plaintiff-Appellee, *v.* GERALD LANDY, Defendant-Appellee.— (MORRIS GOLDMAN, Defendant-Appellant.)

First District (4th Division)   No. 77-806

Opinion filed April 26, 1979.

Ronald J. Clark, of Clark, Thomas & Piers, of Chicago, for appellant.

Elliott L. DuBois, of Chicago, for appellee Alex Bloom.

Allen I. Brown and Levin, Novoselsky, Zwirn & Gallagher, both of Chicago, for appellee Gerald Landy.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, Alex Bloom, and co-defendant, Gerald Landy, were equal partners in the accounting firm of "Alex Bloom & Co." Co-defendant, Morris Goldman, executed a purchase agreement and agreed to buy for $45,000 Bloom's 50% interest in the accounting partnership. By a separate document, Landy personally guaranteed to Bloom Goldman's payment of the purchase price. Subsequently, in December 1972, Goldman and Landy executed a new "Partnership Agreement."

In May 1974, Bloom filed suit in the circuit court of Cook County against Goldman and Landy seeking to recover $30,000 allegedly still due him under the purchase agreement. Landy petitioned for and acquired, within the context of Bloom's lawsuit, an order compelling Goldman to submit to arbitration specified disputes arising from the dissolution of

the Landy-Goldman partnership. The trial court later confirmed the arbitration award. Bloom then moved for summary judgment against Goldman and Landy. After denying Goldman's motion for leave to file an amended answer and counterclaim, the trial court: (1) granted Bloom partial summary judgment in the amount of $20,677.50; (2) held that Goldman was entitled to a credit of $412.50; and (3) found that issues of fact existed with regard to other credits claimed by Goldman amounting to $8,910.

Goldman appeals from the trial court's: (1) confirmation of the arbitration award; (2) award of partial summary judgment for Bloom; and (3) denial of his motion for leave to file a counterclaim.

We affirm the trial court's confirmation of Landy's arbitration award; we reverse the trial court's entry of partial summary judgment for Bloom, finding that Goldman should have been allowed to amend his answer to Bloom's complaint; and we dismiss the remainder of Goldman's appeal for lack of jurisdiction. For purposes of clarification, it should also be noted that we do not reach that portion of the trial court's summary judgment order which entered judgment in Goldman's favor for $412.50.

The pertinent facts disclose that in 1972, Bloom and Landy were certified public accountants and equal 50% partners in the accounting firm of Alex Bloom and Co. On November 27, 1972, Goldman executed a "Purchase Agreement" whereby he agreed to buy Bloom's 50% interest in the accounting partnership for $45,000. The purchase became effective January 1, 1973, when Goldman paid Bloom $5,000 and executed an installment note for $40,000. In a separate document, Landy unconditionally guaranteed Bloom Goldman's payment of the purchase price.

The November 27, 1972, purchase agreement anticipated that Landy and Goldman would enter into a new accounting partnership effective January 1, 1973. The purchase agreement provided that Bloom would occupy the position of a noncapital partner in the new partnership of Landy and Goldman until the entire $45,000 purchase price was paid to him. The purchase agreement also specified that the accounting partnership of Landy and Goldman would be known as "Alex Bloom & Co.," from January 1, 1973, until May 1, 1973, and as "Bloom, Landy & Goldman" from May 1, 1973, on.

Finally, the purchase agreement designated certain clients belonging to the old partnership of Bloom and Landy who were expected to continue on as clients of the new accounting partnership of Landy and Goldman. If any of these designated clients terminated their relationship with the partnership of Landy and Goldman on or before October 1, 1973, Goldman's $45,000 purchase price for Bloom's 50% interest would be reduced according to the following formula:

"by a sum equal to 50% of 1-1/2 times the [client's] annualized fees

* * *. (A)nnualized fees shall be deemed to be the greater of the following two (2) amounts:

(A) The annual fee described in * * * Exhibit "A" '

(B) The actual annualized fees derived by said partnership from any such clients immediately prior to the termination of relationship with the partnership."

On December 11, 1972, Landy and Goldman executed a "Partnership Agreement" whereby they agreed to create a new accounting firm in which each of them would hold a 50% ownership interest. This partnership commenced January 1, 1973. In this partnership agreement, Goldman expressly convenanted to hold Landy harmless on Landy's personal guaranty, to Bloom, of Goldman's payment of the $45,000 purchase price:

"If at [the] time * * * of any of the events described in Paragraphs Nos. 16, 17, 19 or 20, Landy still has a contingent liability by virtue of his guaranty of the Purchase Agreement, Goldman and/or Goldman's estate or personal representative, shall furnish to Landy, such collateral as Landy feels is reasonable in order to insure that he will not ever have to disburse any monies on such guaranty."

The Landy-Goldman partnership agreement also contained the following arbitration clause:

"The Partners agree that irrepairable [sic] damage would be done to the goodwill and reputation of the Partnership if any Partner should bring an action in court to dissolve this Partnership. Accordingly, each of the Partners accepts the provisions under this Agreement as his sole entitlement on termination of the Partnership. Each Partner hereby waives and renounces his right to seek a Court decree of dissolution or to seek the appointment by a Court of a liquidation of the Partnership. In lieu thereof, the Partners agree to arbitrate any disputes between them in accordance with the rules of the American Arbitration Association."

On May 15, 1974, Bloom filed suit against Landy and Goldman seeking to recover $30,000 still allegedly due him under the purchase agreement. Subsequently, on July 11, 1974, Landy informed Goldman by mail that he was voluntarily dissolving their accounting partnership.

On July 31, 1974, Goldman filed a verified answer to Bloom's complaint, denying that $30,000 remained due and owing Bloom under the purchase agreement. Goldman also alleged insufficient knowledge "as to the truth" of the complaint's allegation that Bloom had fully performed all of the covenants and conditions in the purchase agreement. As an affirmative defense, Goldman asserted that certain (unnamed) clients designated in the purchase agreement had terminated their relationship with the partnership of Landy and Goldman prior to October 1, 1973. Goldman, therefore, alleged that, under paragraph 5 of the purchase

agreement, he was entitled to have the $45,000 purchase price reduced by $30,000.

On August 20, 1974, within the context of Bloom's pending lawsuit, Landy filed a petition to compel co-defendant Goldman to submit to arbitration all disputes arising from the dissolution of their accounting partnership. (See Ill. Rev. Stat. 1975, ch. 10, par. 102(c).) Landy argued that various claims which he possessed as a result of the partnership's dissolution, could not be raised against co-defendant Goldman in a cross-complaint because their partnership agreement contained a binding arbitration clause. Landy, therefore, requested that the trial court compel arbitration and retain jurisdiction to enforce the arbitration order and subsequent arbitration award.

On October 29, 1974, the trial court directed Goldman to file an answer to the petition to compel arbitration, and directed Landy to file an answer to Bloom's complaint. Landy filed his answer on November 26, 1974, denying any indebtedness to Bloom. As an affirmative defense, Landy alleged that he was only a guarantor of the claimed indebtedness flowing from Goldman to Bloom, and that if this basic indebtedness was not established no liability would accrue on his (Landy's) guaranty.

On January 20, 1975, Landy submitted to the trial court a proposed order compelling Goldman to submit to arbitration "all alleged claims, demands and disputes between said parties, emanating and/or arising from the dissolution of [their] partnership * * *." On January 24, 1975, Goldman filed his response to Landy's petition and proposed order to compel arbitration. Goldman contended, among other things, that Landy's petition and proposed order failed to demonstrate that the "alleged claims, demands and disputes" sought to be arbitrated fell within the scope of the arbitration clause contained in the Landy-Goldman partnership agreement.

On February 13, 1975, following arguments of counsel, the trial court denied Landy's petition to compel arbitration and granted Landy leave to file an amended petition. Landy filed his first amended petition on February 20, 1975. Landy alleged that he had exercised his right to voluntarily dissolve the accounting partnership of Landy and Goldman but that differences between the two partners precluded the partnership's proper liquidation. Landy asserted further that the following claims fell within the scope of the partnership agreement's arbitration clause:

    (1) division of the partnership's
        (a) clientele,
        (b) physical assets,
        (c) accounts receivable and work in progress,
        (d) existing liabilities;
    (2) Goldman's obligation, under paragraph 22 of the Partnership

Agreement, to furnish Landy, upon dissolution, with reasonable collateral to ensure that Landy would never have to disburse any money on his personal guaranty to Bloom; and

(3) Landy's alleged right to be reimbursed for attorney fees and court costs expended by him in connection with his personal guaranty to Bloom.

Goldman moved to strike Landy's first amended petition to compel arbitration, contending: (1) that the matters alleged to be subject to arbitration were not encompassed within the scope of the parties' arbitration clause; and (2) that two conditions precedent to obtaining a judicial order compelling arbitration had not been met, namely: (a) that a formal demand for arbitration had never been served on Goldman; and (b) that arbitration proceedings had never been initiated before the designated American Arbitration Association.

On June 3, 1975, the trial court struck and denied Landy's first amended petition to compel arbitration and granted him leave to file a second amended petition. On June 6, 1975, Landy filed a formal demand for arbitration with the American Arbitration Association. On June 19, 1975, after receiving a copy of the arbitration demand, Goldman requested the trial court to stay the arbitration proceedings until the scope of the parties' arbitration clause could be judicially determined. A stay was granted to September 8, 1975.

On July 11, 1975, Landy filed with the trial court his second amended petition to compel arbitration. Goldman moved to dismiss the second amended petition on two grounds: (1) that the matters Landy wanted submitted to arbitration were beyond the scope of the arbitration clause; and (2) (Goldman asserted for the first time) that an agreement to arbitrate did not exist because the purchase and partnership agreements were both invalid and unenforceable as a result of alleged fraud in the inducement. In a verified affidavit Goldman stated:

"During 1972, affiant entered into negotiations with Alex Bloom & Company in order to purchase the fifty percent (50%) partnership interest of Alex Bloom in said company and to enter into a partnership agreement with Gerald Landy. * * *

Unknown to affiant, Alex Bloom & Company, prior to affiant's purchase of Alex Bloom's interest therein, had repeatedly violated the ethics of the accounting profession in the following manner:

(a) Alex Bloom & Company prepared on plain stationary a false financial statement for one of its clients showing a positive net worth in excess of $200,000, knowing that this financial statement was to be used and was in fact used by said client in order to obtain credit from third parties. A second financial statement was prepared for this client on the partnership's letterhead which showed a negative net worth.

(b) Alex Bloom & Company prepared for a certain client a trial balance which showed a reserve for cumulative depreciation of a building. Although no building appeared as an asset on said trial balance, an unaccounted for receivable due from a shareholder in the approximate amount of the cost of said building did appear. This fact and the existence of stale outstanding checks (some over 15 years old) indicate that funds may have been improperly taken out of the corporation without taxation.

(c) Affiant is informed and believes that Alex Bloom & Company filed on behalf of at least one client false sales tax returns.

If affiant had been aware of these fraudulent practices, affiant would not have entered into the Purchase Agreement with Alex Bloom and the Partnership Agreement with Gerald Landy.

Affiant did not become aware of the full extent of the fraudulent practices committed by Alex Bloom & Company until shortly before Landy sent the July 11, 1974 letter of dissolution.

Both Alex Bloom and Gerald Landy continued to conceal said fraud both before the execution of the Partnership and Purchase Agreements and after.".

Goldman argued that the negotiations leading up to his purchase agreement with Bloom and his partnership agreement with Landy were conducted simultaneously as one transaction. He argued further that the above allegations of fraud concerned both Bloom and Landy and underlied both agreements.

After hearing arguments of counsel, the trial court entered an order on September 8, 1975, directing Landy and Goldman to submit to arbitration all matters delineated in the arbitration demand previously filed with the American Arbitration Association. The trial court "overruled, without prejudice," Goldman's motion to dismiss Landy's second amended petition to compel arbitration.

On April 29, 1976, upon conclusion of the arbitration proceedings, the following arbitration award was entered:

"Amount due LANDY * * *

| | |
|---|---:|
| a. Clients 7/12/74 | $(450.00) |
| b. Fixed assets | 500.00 |
| c. Accounts receivable | 3,384.00 |
| d. Draw | 249.47 |
| e. Unpaid Liabilities | (837.50) |
| f. Insurance rebate | 100.00 |
| Net due LANDY | $2,447.03 |

Pursuant to paragraph 22 of the Partnership Agreement, GOLDMAN shall furnish LANDY $30,000 in collateral to protect

LANDY from an adverse finding in a pending lawsuit brought against GOLDMAN [By Bloom] in which LANDY is a party defendant by virtue of his guaranty [of GOLDMAN's performance of the Purchase Agreement]."

In the arbitration proceedings, Goldman again attempted to attack the validity of the partnership agreement by arguing fraud in the inducement. Goldman reasoned: (1) that the trial court intended the arbitrator to resolve the fraud issue; and (2) that resolution of the contract's validity by the arbitrator was a necessary prerequisite to reaching the merits of the claims submitted for arbitration. Landy contended that the trial court's order compelling arbitration did not submit the fraud issue to the arbitrator for resolution, and that, in any event, such an issue was not a proper subject for arbitration. After considering the positions of the parties, the arbitrator ruled that he lacked "jurisdiction to hear [Goldman's] claim that there was fraud in the execution [sic][1] of the Partnership [A]greement."

On June 29, 1976, Landy petitioned the trial court for confirmation of the arbitration award. Goldman was given until August 10, 1976, to file a response to the petition. Goldman filed his response late, on August 24, 1976. In his response, Goldman contended, *inter alia*, that the arbitration award could not be confirmed because neither the trial court nor the arbitrator had previously resolved the fraud in the inducement issue.

On October 8, 1976, prior to the scheduled hearing on Landy's petition to confirm the arbitration award, Bloom filed a motion for summary judgment against Goldman and Landy. Bloom pointed out that Goldman's sole defense to the complaint was that certain (unnamed) clients designated in the purchase agreement had terminated their relationship with the partnership of Landy and Goldman prior to October 1, 1973, thereby allegedly entitling Goldman to a $30,000 reduction of the $45,000 purchase price. Bloom demonstrated that Goldman was unable to identify even one of these alleged clients in responses to various interrogatories. Bloom concluded that Goldman's sole defense was nonmeritorious and he (Bloom) was, therefore, entitled to judgment, as a matter of law.

On November 12, 1976, Goldman requested leave to file instanter: (1) his response to Bloom's motion for summary judgment; (2) an amended answer to Bloom's complaint; and (3) a counterclaim against both Bloom and Landy. All three documents raised the issue of fraud in the inducement and, thereby, attacked the validity of the purchase agreement.

---

[1] Goldman's allegations of fraud were characterized alternatively by the arbitrator, the parties and the trial judge as fraud in the execution and fraud in the inducement. Goldman, however, does not contend that he was deceived as to the nature of the papers he signed (*i.e.*, fraud in the execution), but rather that he was *induced* to sign the purchase and partnership agreements through fraudulent misrepresentations. Consequently, Goldman's allegations of fraud will be characterized in this opinion as fraud in the inducement.

In its order of November 12, 1976, the trial court: (1) denied, without prejudice, Goldman's request to file a counterclaim; (2) continued to November 16, 1976, Goldman's request to file an amended answer to Bloom's complaint; and (3) granted Goldman's request to file instanter his response to Bloom's motion for summary judgment. The trial court, however, expressly provided that, in ruling on the motion for summary judgment, it would not consider any issues which were not raised by Goldman in his original answer to Bloom's complaint.

Several matters pertaining to this litigation were heard by the trial court on November 16, 1976, and December 6, 1977. The trial court first considered Landy's petition to confirm the April 29, 1976, arbitration award. Landy argued that he was entitled to confirmation, as a matter of law, because: (1) Goldman had not moved to vacate the arbitration award within 90 days of its entry (Ill. Rev. Stat. 1975, ch. 10, par. 112); and (2) even if Goldman's August 24, 1976, answer to the petition to confirm could be considered a timely pleading for vacating the award, no statutory grounds (Ill. Rev. Stat. 1975, ch. 10, par. 112) supporting such vacation were alleged. Goldman contended that he had not been afforded a hearing on the validity of the partnership agreement, and more particularly on the fraud in the inducement issue, and, therefore, the petition to confirm should be denied. After hearing arguments of counsel, the trial court granted Landy's petition and confirmed the arbitration award.

The trial court then considered Bloom's motion for summary judgment. Following extensive argument by counsel, the trial court reserved its ruling on the summary judgment motion. The trial court granted Goldman additional time to specify those clients who allegedly terminated their relationship with the partnership of Landy and Goldman, by reason of which Goldman contended he was entitled to a $30,000 setoff from the $45,000 purchase price specified in the purchase agreement.

The trial court then considered Goldman's motion: (1) for leave to file an amended answer to Bloom's complaint; and (2) for reconsideration of the trial court's prior order denying Goldman leave to file a counterclaim against both Bloom and Landy. Following arguments of counsel, the trial court denied Goldman's entire motion.

On December 17, 1976, Goldman requested the trial court to reconsider its orders confirming the arbitration award and denying him leave to file an amended answer and counterclaim. The motion was denied. On January 3, 1976, Goldman filed his amended response to Bloom's motion for summary judgment.

On January 27, 1977, the trial court found "no just reason to delay enforcement or appeal" of its prior order confirming Landy's arbitration award. On February 4, 1977, Goldman requested that the trial court enter a

finding of "no just reason to delay enforcement or appeal" with regard to its order denying Goldman leave to file an amended answer and counterclaim. The request was denied.

On February 24, 1977, the trial court: (1) entered partial summary judgment for Bloom in the amount of $20,677.50; (2) held that Goldman was entitled to a credit of $412.50; and (3) found that issues of fact existed with regard to other credits amounting to $8,910 which Goldman alleged were also due him. The trial court made an express written finding that there was no just reason to delay enforcement or appeal of this order.

On February 25, 1977, Goldman filed a notice of appeal from the following three orders:

> (1) the trial court's January 27, 1977, order which found no just reason to delay enforcement or appeal of the December 6, 1976, order confirming Landy's arbitration award;
> (2) the trial court's February 4, 1977, order denying Goldman's request for the entry of a finding that there was no just reason to delay enforcement or appeal of the December 6, 1976, order, which, in turn, had denied Goldman's motion: (a) for leave to file an amended answer to Bloom's complaint; and (b) for reconsideration of an earlier order denying him leave to file a counterclaim; and
> (3) the trial court's order of February 24, 1977, which granted Bloom partial summary judgment and found no just reason to delay enforcement or appeal.

Opinion

I

Initially, Goldman contends the trial court erred in confirming Landy's arbitration award. We disagree.

In July 1974, Landy voluntarily dissolved his accounting partnership with Goldman. On June 6, 1975, pursuant to an arbitration clause in the partnership agreement, Landy filed a demand for arbitration with the American Arbitration Association. After receiving a copy of this demand, Goldman requested that the trial court stay the arbitration proceedings. A temporary stay was granted.

On July 11, 1975, Landy petitioned the trial court to compel Goldman to submit to arbitration. Goldman moved to dismiss this petition contending, *inter alia*, that an agreement to arbitrate did not exist since the partnership agreement was induced by fraud and, therefore, was voidable at his option. (See Ill. Rev. Stat. 1975, ch. 10, pars. 101, 102.) On September 8, 1975, the trial court ordered Goldman to submit to arbitration those matters specified in the arbitration demand previously filed with the American Arbitration Association. The trial court "overruled, without prejudice" Goldman's motion to dismiss Landy's petition to compel

arbitration, and, consequently, did not reach the merits of Goldman's contention that the partnership agreement was induced by fraud.

■■ Although Goldman had a right to appeal the trial court's order compelling arbitration (Ill. Rev. Stat. 1975, ch. 10, par. 118; Ill. Rev. Stat. 1975, ch. 110A, par. 307(a)(1); *Security Mutual Casualty Co. v. Harbor Insurance Co.* (1978), 65 Ill. App. 3d 198, 382 N.E.2d 1, *appeal allowed* (1979), 72 Ill. 2d 585, he chose not to do so. During the arbitration proceedings, Goldman again attempted to attack the validity of the partnership agreement by arguing fraud in the inducement. The arbitrator, however, found that he lacked "jurisdiction" to consider the fraud issue. On April 29, 1976, at the conclusion of the arbitration proceedings, the arbitrator rendered an award against Goldman and in favor of Landy for $2,447.03.

On June 29, 1976, Landy petitioned the trial court to confirm the arbitration award. Goldman was given until August 10, 1976, to file a response to this petition. Goldman's response was filed two weeks late, on August 24, 1976. Goldman contended, *inter alia*, that the arbitration award could not be confirmed because neither the trial court nor the arbitrator had previously resolved the fraud in the inducement issue. The trial court rejected Goldman's contention and confirmed the award.

Authorities differ as to the proper forum for resolving a claim of fraud in the inducement.[2] However, we need not reach that specific issue here. For purposes of this appeal, it is sufficient to recognize that Goldman did have a right to have his claim of fraud in the inducement resolved by either the trial court, in the section 2 proceedings to compel arbitration (Ill. Rev. Stat. 1975, ch. 10, par. 102), or by the arbitrator, in the subsequent arbitration proceedings. However, this does not mean it was improper for the trial court to confirm Landy's arbitration award.

---

[2] Under the minority approach, a claim of fraud in the inducement is to be resolved by the trial court as a preliminary issue to arbitration. (6A Corbin on Contracts §1444, at 449 (1962); *George Engine Co. v. Southern Shipbuilding Corp.* (La. 1977), 350 So.2d 881; *cf. People ex rel. Delisi Construction Co. v. Board of Education* (1975), 26 Ill. App. 3d 893, 326 N.E.2d 55; *International Union of Operating Engineers, Local Union No. 139 v. Carl A. Morse, Inc.* (7th Cir. 1976), 529 F.2d 574, 579.) The majority approach, on the other hand, favors submitting the fraud issue to the arbitrator. Under this approach: Except where the parties otherwise intend, arbitration clauses are deemed severable from the contracts in which they are embedded, and where no claim is made that fraud was directed to the arbitration clause itself, a *broad* arbitration clause is held to encompass arbitration of the claim that the contract, in general, was induced by fraud. (*Two Sisters, Inc. v. Gosch & Co.* (1976), 171 Conn. 493, 370 A.2d 1020; *Atcas v. Credit Clearing Corp.* (1972), 292 Minn. 334, 197 N.W.2d 448; *Weinrott v. Carp* (1973), 32 N.Y.2d 190, 344 N.Y.S.2d 848, 298 N.E.2d 42; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967), 388 U.S. 395, 18 L. Ed. 2d 1270, 87 S. Ct. 1801; Annot., 91 A.L.R.2d 936 (1963).) Both the minority and majority approaches agree that if the aggrieved party does not seek rescission of the contract, but only damages for the loss caused by the fraud, the issue of fraud in the inducement is to be resolved by the arbitrator. 6A Corbin on Contracts §1444A, at 465 (1962); *Atcas v. Credit Clearing Corp.* (1972), 292 Minn. 334, 346-47, 197 N.W.2d 448, 455-56.

■■ Section 11 of the Uniform Arbitration Act (Ill. Rev. Stat. 1975, ch. 10, par. 101 *et seq.*) clearly provides that:

> "Upon application of a party, the court shall confirm an award, *unless within the time limits hereinafter imposed grounds are urged for vacating * * * the award,* in which case the court shall proceed as provided in Section 12 * * *." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 10, par. 111.)

Section 12 states in relevant part:

> "Upon application of a party, the court shall vacate an award where:
>
> * * *
>
> (3) The arbitrators exceeded their powers;
>
> (4) The arbitrators * * * refused to hear evidence material to the controversy * * *; or
>
> (5) There was no arbitration agreement and the issue was not adversely determined [by the trial court] in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection* * *.
>
> (b) *An application under this Section shall be made within 90 days after delivery of a copy of the award to the applicant * * *."*
(Emphasis added.) Ill. Rev. Stat. 1975, ch. 10, par. 112.

Pursuant to section 12, a party must present reasons for vacating an arbitration award, within 90 days after its delivery. This may be done in one of two ways; either (1) by filing a petition with the trial court to vacate the award; or (2) by raising reasons supporting vacation in an answer to the other party's petition to confirm the award. It is important to recognize that the filing of a petition to confirm does *not* extend the 90-day statutory time period within which a request for vacation of the award must be presented. Ill. Rev. Stat. 1975, ch. 10, pars. 111, 112; *cf. Emporium Area Joint School Authority v. Anundson Construction & Building Supply Co.* (1960), 402 Pa. 81, 166 A.2d 269; *Trustees of the Boston & Main Corp. v. Massachusetts Bay Transportation Authority* (1973), 363 Mass. 386, 393-95, 294 N.E.2d 340, 345-46; *Component Systems, Inc. v. Murray Enterprises of Minnesota, Inc.* (1974), 300 Minn. 21, 217 N.W.2d 514; see generally Annot., 85 A.L.R.2d 779, §4 (1962).[3]

■■ The arbitration award was delivered to Landy and Goldman on April 29, 1976. On June 29, 1976, Landy filed a petition with the trial court to confirm the award. Goldman's response to this petition was not filed until

---

[3] While neither Landy nor Goldman has brought it to our attention, we are aware that a contrary result was reached in *Goossen v. Adair* (1960), 185 Cal. App. 2d 810, 8 Cal. Rptr. 855, construing Cal. Civ. Pro. Code §§1287, 1288, 1289, 1290 (Deering 1960). However, we do not find *Goossen* persuasive in this case, in light of the unequivocal language of sections 11 and 12 of the Uniform Arbitration Act (Ill. Rev. Stat. 1975, ch. 10, pars. 111, 112).

August 24, 1976, well beyond the 90-day statutory time period prescribed by section 12.[4] We find that by failing to move for vacation of the award in a timely manner, Goldman waived any error in connection with his claim of fraud in the inducement. Consequently, the trial court's confirmation of the arbitration award was proper.

## II

Goldman next contends the trial court erred in granting Bloom partial summary judgment. This issue is inextricably intertwined with Goldman's further contention that the trial court erred in denying his motion for leave to file an amended answer to Bloom's complaint.

Our initial inquiry is whether an appeal properly lies from these orders entered by the trial court. (*Cohen v. Sterling Nursing Home, Inc.* (1978), 57 Ill. App. 3d 162, 372 N.E.2d 934.) The jurisdiction of the appellate court is generally dependent upon the timely filing of a notice of appeal after the entry of a *final judgment.* (Ill. Rev. Stat. 1975, ch. 110A, pars. 301, 303(a).) Since this case concerns both multiple parties and multiple claims, it is governed by Supreme Court Rule 304(a):

> "(a) If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from *a final judgment* as to one or more but fewer than all of the parties or claims *only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal.* Such a finding may be made at the time of the entry of the judgment or thereafter on the court's own motion or on motion of any party. The time for filing the notice of appeal shall run from the entry of the required finding. *In the absence of such a finding,* any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 110A, par. 304(a).

The inclusion of the special finding in the trial court's order—"that there is no just reason for delaying enforcement or appeal"—cannot confer appellate jurisdiction if the order is in fact not final. (*Crane Paper Stock Co. v. Chicago & Northwestern Ry. Co.* (1976), 63 Ill. 2d 61, 344 N.E.2d 461.) Supreme Court Rule 304's special finding does not bestow finality on a judgment or order. Rather, it simply makes appealable a final

---

[4] We are aware that the trial court exceeded section 12's 90-day statutory time period by granting Goldman until August 10, 1976, to file a response to the petition to confirm. However, we need not determine what effect the trial court's action had, if any, for Goldman's response to Landy's petition was not filed within the additional time allowed by the trial court, but, rather, was filed two weeks late, on August 24, 1976.

judgment or order in the context of a multiple claims or multiple parties suit. Ill. Ann. Stat., ch. 110A, par. 304(a), Committee Comments, at 585 (Smith-Hurd 1968).

A final judgment or order adjudicates and disposes of the parties rights and liabilities concerning the entire controversy or some separate and definite part thereof. *Village of Niles v. Szczesny* (1958), 13 Ill. 2d 45, 147 N.E.2d 371; *Peter G. Georges, Inc. v. Feldon Building Corp.* (1978), 61 Ill. App. 3d 631, 377 N.E.2d 1102.

Goldman appeals from the trial court's order granting Bloom partial summary judgment. The initial issue we must confront is whether summary judgment on part of a single money claim—*i.e.*, on $20,677.50 of Bloom's $30,000 contract claim—is a final order. The proper resolution of this issue requires an examination of not only Supreme Court Rule 304(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 304(a)), but also of section 57 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57) which governs summary judgments and decrees.

Before examining these two provisions, it is helpful to first consider their forebearers and counterparts in the Federal Rules of Civil Procedure. Supreme Court Rule 304 is patterned after Federal Rule of Civil Procedure 54. Federal Rule 54 provides, in relevant part:

"(a) *Definition; Form.* 'Judgment' as used in these rules includes a decree and any order from which an appeal lies. * * *

(b) *Judgment upon Multiple Claims or Involving Multiple Parties.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, *the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties* only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other forms of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." (Emphasis added.)

The Federal courts have held that at least one *entire* claim must be fully adjudicated before certification and an appeal under Rule 54 are proper. (6 Moore's Federal Practice §54.27[3], at 334, §54.34[1], at 526-27, §54.34[2.—2], at 559, §54.40, at 681 (2d ed. 1976); see *Bogosian v. Gulf Oil Corp.* (3d Cir. 1977), 561 F.2d 434, 440, *cert. denied* (1978), 434 U.S. 1086, 55 L. Ed. 2d 791, 98 S. Ct. 1280; *Rieser v. Baltimore & Ohio R.R. Co.* (2d Cir. 1955), 224 F.2d 198, 199.) As the Second Circuit Court of Appeals

stated in *International Controls Corp. v. Vesco* (2d Cir. 1976), 535 F.2d 742, 748:

> "[T]he district court may utilize its Rule 54(b) [certification] powers with respect to a given claim only if *all* damages stemming from that claim have been fixed." (Emphasis added.) Accord, *Cinerama, Inc. v. Sweet Music, S.A.* (2d Cir. 1973), 482 F.2d 66 (partial summary judgment).

The rationale for this principle, with regard to summary judgments, traces to Federal Rule of Civil Procedure 56, the forebearer of section 57 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57). Federal Rule 56 provides, in pertinent part:

> "(a) *For Claimant.* A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor *upon all or any part thereof.*
>
> ⁂
>
> (c) * * * A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
>
> (d) *Case Not Fully Adjudicated on Motion. If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked* and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make *an order* specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly." (Emphasis added.)

If a Federal District Court is precluded from rendering summary judgment on an entire claim, it is empowered under subparagraph (d) of Federal Rule 56 to enter an *interlocutory* order specifying the extent to which the facts and the damages are not in substantial controversy. This partial summary adjudication is not a final order and, therefore, not appealable under Federal Rule 54:

> "Rule 54(a) defines 'judgment' as * * * 'any order from which an appeal lies.' Subdivision (d) of Rule 56 indicates clearly, however,

that a partial summary 'judgment' is not a final judgment, and, therefore, * * * not appealable, unless in the particular case some statute allows an appeal from the interlocutory order involved. The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." Fed. R. Civ. P. 54, 28 U.S.C.A., Committee Comments at 415 (1971); see 6 (part 2) Moore's Federal Practice §56.20[4] (2d ed. 1976).

■■ The question presented in this case is whether an order granting summary judgment on part of a single claim is also nonfinal for purposes of appeal under the applicable Illinois rules. Section 57 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57) provides, in relevant part:

"(1) For plaintiff. Any time after the opposite party has appeared or after the time within which he is required to appeal has expired, a plaintiff may move * * * for * * * summary judgment * * * in his favor *for all or any part of the relief sought.*" (Emphasis added.) Although essentially patterned after Federal Rule of Civil Procedure 56, section 57 of the Illinois Civil Practice Act rejected subparagraph (d) of the Federal rule which authorizes the entry of "interlocutory" orders disposing of less than an entire claim. (Ill. Ann. Stat., ch. 110, par. 57, Committee Comments, at 60, 61-62 (Smith-Hurd 1968).) In view of this rejection, and considering the unequivocal language of section 57 that a plaintiff may move for summary judgment on "any part of the relief sought," we find that the trial court's grant of partial summary judgment for Bloom was a final order. *Messenger v. Rutherford* (1970), 130 Ill. App. 2d 407, 264 N.E.2d 775; but see *Flynn v. Mahin* (1971), 1 Ill. App. 3d 51, 272 N.E.2d 381; *cf. Zion State Bank & Trust Co. v. Efraim Carlson & Son, Inc.* (1979), 68 Ill. App. 3d 930, 386 N.E.2d 872; see generally Annot., 75 A.L.R.2d 1201 (1961).

Our conclusion is supported by the fact that section 57 has "some historical background in section 55 of the Practice Act of 1907." (Ill. Ann. Stat., ch. 110, par. 57, Committee Comments, at 60 (Smith-Hurd 1968).) Section 55 provided in relevant part:

"If the plaintiff in any suit upon a contract, express or implied, for the payment of money, shall file with his declaration an affidavit showing the nature of his demand, and the amount due him from the defendant, after allowing to the defendant all his just credits, deductions and set-offs, if any, he shall be entitled to judgment, as in case of default, unless the defendant, or his agent or attorney, shall file with his plea an affidavit, stating that he verily believes the defendant has a good defense to said suit upon the merits to the whole or a portion of the plaintiff's demand, and specifying the nature of such defense, and if a portion specifying the amount, (according to the best of his judgment and belief) * * *. *If the*

*affidavit of defense is to only a portion of the plaintiff's demand, the plaintiff shall be entitled to a judgment for the balance* of his demand and the suit shall thereafter proceed as to the portion of the plaintiff's demand in dispute as if the suit had been brought therefor; * * *." (Emphasis added.) (Ill. Rev. Stat. 1907, ch. 110, par. 55.)

Pursuant to section 55, the Illinois courts consistently held that partial summary judgment for a portion of the damages claimed by a plaintiff in a contract action was a final judgment for purposes of appeal. *Cahn v. Northwestern Mutual Life Insurance Co.* (1915), 192 Ill. App. 172.

Since we conclude that the partial summary judgment entered below is a final order, and since the trial court made the requisite finding of "no just reason for delaying enforcement or appeal," Goldman's appeal of this order properly lies under Supreme Court Rule 304(a)). Accordingly, the preliminary issue we confront, with regard to the merits of the partial summary judgment order, is whether the trial court erred in denying Goldman leave to amend his answer. In the proposed amended answer, Goldman attempted to raise the additional defense that the purchase agreement, on which Bloom's complaint is based, is void and unenforceable because of alleged fraud in the inducement.

■ At any time before final judgment, a defendant may amend his answer, on just and reasonable terms, to change a defense or to add a new defense. (Ill. Rev. Stat. 1977, ch. 110, par. 46(1).) Our courts have continually acknowledged that section 46 of the Civil Practice Act is to be liberally applied (*Banks v. United Insurance Co. of America* (1975), 28 Ill. App. 3d 60, 328 N.E.2d 167), so that cases will be resolved on their merits rather than on procedural technicalities (Ill. Rev. Stat. 1977, ch. 110, par. 4; *Simmons v. Columbus Venetian Stevens Buildings* (1958), 20 Ill. App. 2d 1, 155 N.E.2d 372).

"Although a motion to amend the pleadings is addressed to the sound discretion of the trial court, the greatest liberality should be [exercised] in allowing amendments" to be made. (*First National Bank & Trust Co. v. Sousanes* (1978), 66 Ill. App. 3d 394, 396, 384 N.E.2d 30, 31.) The paramount consideration is whether the proposed amendment furthers the interest of justice. *Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 193 N.E.2d 833; *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164.

Bloom brought this action against Goldman and Landy in May 1974. Goldman filed his original answer to Bloom's complaint on July 31, 1974. From August 30, 1974, until June 29, 1976, Goldman and co-defendant Landy conducted extensive arbitration proceedings in the context of this case. During the course of those proceedings, Goldman repeatedly contended that both the partnership agreement, executed with Landy, and

the purchase agreement, executed with Bloom, were void and unenforceable due to alleged fraud in the inducement.

On June 29, 1976, co-defendant Landy filed a petition with the trial court to confirm the arbitration award. Goldman's response to this petition was filed on August 24, 1976. It again raised the fraud in the inducement issue. Before a hearing could be held on Landy's petition to confirm, Bloom came in and moved for summary judgment against both Goldman and Landy. It was at this point that Goldman requested leave to amend his answer to Bloom's complaint so as to add the defense of fraud in the inducement.

Bloom points out, and the record discloses, that shortly before July 11, 1974, Goldman acquired knowledge of the alleged facts giving rise to his claim of fraud in the inducement. Bloom contends that since the fraud defense was not raised in Goldman's original answer filed on July 31, 1974, and since Goldman did not attempt to amend his answer to include the fraud defense until over two years later, the trial court properly rejected the proposed amendment. We cannot agree.

Merely because Goldman did not raise the fraud defense in his original answer, cannot, in and of itself, preclude Goldman from amending his answer to include that defense. Rather, the critical factor in this case is the two-year time span between the filing of Goldman's original answer and his proposed amended answer. Although this delay is certainly not laudable, it is understandable in light of the fact that from almost the very first day Bloom filed suit, Goldman and co-defendant Landy were absorbed in extensive arbitration proceedings that were conducted in the context of this case. Indeed, it was at the very culmination of these arbitration proceedings, proceedings in which Goldman had continually raised the fraud in the inducement issue, that Bloom filed his motion for summary judgment.

It is important to recognize that Goldman's request to amend his answer was not made during or on the very eve of trial. Furthermore, Bloom's bare assertion of prejudice is unpersuasive. As we stated in *Banks v. United Insurance Co. of America* (1975), 28 Ill. App. 3d 60, 64, 328 N.E.2d 167, 171:

> "To substantiate a charge of prejudice the complaining party must rely on something more than mere inconvenience occasioned by delay. The delay must operate to hinder his ability to present his case on its merits."

Allowing Goldman to amend his answer would have in no way hindered Bloom's ability to present his case on the merits.

■■ Consequently, in view of the facts and circumstances presented by this case and the impact of the ruling on the positions of the parties, we

find that the trial court's refusal to permit Goldman to amend his answer did not serve the ends of justice, and was an abuse of discretion.

Since we find that Goldman should have been allowed to amend his answer to Bloom's complaint, so as to add the defense of fraud in the inducement, we must also conclude that the trial court's grant of partial summary judgment for Bloom (based on Goldman's original answer) was error.

## III

■■ Goldman appeals from the trial court's order denying him leave to file a counterclaim. Although this a final order, it is, nevertheless, not appealable for two reasons: (1) it did not adjudicate all the claims, rights and liabilities of all the parties; and (2) the trial court did not enter an express written finding that there is no just reason for delaying enforcement or appeal. (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a); *Treece v. Shawnee Community Unit School District No. 84* (1968), 39 Ill. 2d 136, 233 N.E.2d 549.) The trial court's refusal to make the requisite finding is beyond review. (*E.M.S. Co. v. Brandt* (1968), 103 Ill. App. 2d 445, 243 N.E.2d 695.) Accordingly, Goldman's appeal from the trial court's order denying him leave to file a counterclaim must be dismissed for lack of jurisdiction.

For the reasons stated, we affirm the trial court's confirmation of Landy's arbitration award; we reverse Bloom's partial summary judgment; we dismiss the remainder of Goldman's appeal for lack of jurisdiction; and we remand for further proceedings consistent with this opinion. As noted previously, we do not reach that portion of the trial court's summary judgment order which entered judgment in Goldman's favor for $412.50.

Affirmed in part, reversed in part, appeal dismissed in part, and remanded for further proceedings consistent with this opinion.

*JIGANTI, P. J., and ROMITI, J., concur.

---

* Dieringer, J., having retired, Jiganti, P. J., read the briefs and participated in the rendering of this opinion.