## Rice *v.* Loomis and Another.

ARBITRATION.—FRAUD.—A party may, by a submission to arbitration, waive his right to a trial in the court having jurisdiction of the matter in dispute, but if the submission be procured by fraud, the award is not binding.

SAME.—A and B, by a written agreement, submitted certain matters of difference to arbitration. The agreement provided that A should execute a note, with surety, payable to B, for $300, which should be placed in the hands of the arbitrators, and that B should deposit a note signed by "*B. & Co.*," payable to A, for a like amount. If the award was for less than $300, the difference was to be credited on the note of the losing party, and both notes were then to be delivered by the arbitrators to the prevailing party. The award was in favor of B, for more than the amount of A's note, and the notes were delivered to B in pursuance of the agreement. In a suit by A upon an account which was included in the submission, B answered setting up the submission and award. Reply, that the submis-

sion was procured by the fraud of B, in this: that B, who was insolvent, represented that his brother, who was solvent, was a partner with him in the firm of *B. & Co.*, and that A was thereby induced to consent to the submission, &c.; that said representation was false, and that B was the only member of the firm of *B. & Co.*, &c.

*Held*, that the facts stated in the reply were sufficient to avoid the award.

APPEAL from the *Cass* Circuit Court.

FRAZER, C. J.—The appellant, *Gilbert J. Rice*, sued the appellee, *Francis B. Loomis*, on an account. Demurrers were overruled to the second and third paragraphs of the answer, and those rulings are assigned for error. But as the only question argued by the appellant is made by an assignment of error upon the sustaining of a demurrer to the first paragraph of the reply, we shall discuss and decide that alone, regretting that the appellee has not chosen to give us the benefit of any argument whatever upon what seems to be a question of some difficulty.

From the third paragraph of the answer, and the first paragraph of the reply, the following facts appeared: That a written agreement for a submission to arbitration was made, as follows:

" WHEREAS, a difference in settlement of accounts has arisen between *C. C. Loomis,* as agent for the *Uncas Woolen Mills*, of *Norwich, Connecticut*, and *Gilbert J. Rice*, of *Logansport, Indiana*; and, *whereas*, the said parties have agreed to refer the same, together with all matters of evidence relative thereto, to the arbitration of *Franklin Keys* and *John Lytle*, with *A. M. Higgins* as umpire, selected as such by the said arbitrators;

" Now, therefore, that the said arbitration so to be made may be final between the said parties in difference, they, by their signatures hereunto, agree that *C. C. Loomis*, for himself and as agent for the *Uncas Woolen Mills* as above named, shall place in the hands of the arbitrators above named, a promissory note drawn by *Loomis & Co.*, for the sum of $300, and payable thirty days after date, to the order of *Gilbert J. Rice*, and to be dated corresponding with the date

hereof; and that *Gilbert J. Rice* shall also place in the hands of said arbitrators a like promissory note, for the sum of $300, to be drawn by himself and *E. S. Rice*, payable in thirty days after date, to the order of *C. C. Loomis*, and to be dated corresponding with the date hereof.

" The notes so made respectively by the parties, as above named, to be held by the said arbitrators until a settlement be made and an award or judgment be rendered by them between the parties in difference. If such award or judgment be for a less sum than $300, and be in favor of *C. C. Loomis*, agent as aforesaid, then an indorsement for the difference in amount shall be made on the note of *Gilbert J. Rice* and *E. S. Rice* by the said arbitrators, and said note shall by them, together with the note of *Loomis & Co.*, as herein before mentioned, be delivered to *C. C. Loomis*, or if the arbitrators shall find an award or judgment in favor of *Gilbert J. Rice* for the payment of an amount less than $300, an indorsement for the difference shall be made upon the note of *Loomis & Co.* placed in the hands of the arbitrators as aforesaid, and shall by them, together with the note drawn by *Gilbert J. Rice* and *E. S. Rice*, be delivered to *Gilbert J. Rice*.

" And the said parties, *C. C. Loomis*, agent as aforesaid, and *Gilbert J. Rice*, hereby agree that the award or judgment, so to be rendered by the arbitrators herein above named, and the delivery to either of said parties, as the same may be determined upon, of the promissory notes above mentioned, with any indorsement made thereon by the said arbitrators, will be accepted by them, the said *C. C. Loomis*, agent as aforesaid, and *Gilbert J. Rice*, and the same shall be effective as a full and final liquidation of all accounts and a settlement of the matters in difference between them, which shall have been submitted to the said arbitrators.

" Witness our hands and seals this 25th day of *July*, 1862.

[ Signed ]        " C. C. LOOMIS,<br>" GILBERT J. RICE."

That an award was afterwards made, as follows:

STATEMENT OF AWARD.

*Gilbert J. Rice* in account with *C. C. Loomis*:
                              *Dr.*

An account filed by *Gilbert J.*
  *Rice* ...................$510 06
Deduct sale for shingles.....   6 00—$504 06
Payment to *D. D. Dykeman*.........   5 00
Payment of *Frazer's* board bill.. ....  113 63
Payment of *Wibby's* board bill.. ....   3 50
Payment of *Jones's* board bill.......  54 00
6,500 shingles.....................  92 05
Bill of nails.......................  12 65
Damages on goods.................  30 00
Damages on wool ................,......  11 29
Interest on above, and goods levied
  upon by the sheriff of *Newcastle*....  72 51—$898 70
                              *Cr.*
By services from *March* 25, 1858, to
  *April* 2, 1859, less twenty days, being
  three hundred days at $1 per day...$300 00
By services from *April* 22, 1859, to
  *November* 22, 1859, less five days, one
  hundred and seventy-eight days..... 178 00
By services from the 15th to the 21st of
  *December*, 1859, six days............  6 00
To cash from *D. W. Brown*..........  7 00
To cash at *Logansport Bank*...........  79 89
To cash at *Greencastle*................  25 00
Due *Loomis* ........................ 302 81—$898 70

                     "LOGANSPORT, *July* 28, 1862.

" The undersigned arbitrators to settle differences in matters of account between *Gilbert J. Rice* and *C. C. Loomis*, find the foregoing statement to be and exhibit a true state of the account between them, and award the

above stated balance, $302 81, as due and to be paid to *C. C. Loomis* by *G. J. Rice*, as a full and final liquidation of all accounts between them to this date, *July* 28, 1862.

[Signed]                    " JOHN LYTLE,

                         " F. KEYS.

" In pursuance of the foregoing arrangement, the arbitrators and umpire therein named met, and after mature deliberation upon the evidence submitted, and a careful examination of the accounts between said parties, do award and adjudge that the said *Gilbert J. Rice* is indebted to said *C. C. Loomis* in the sum of $302 81, to be paid by said *Rice* to said *Loomis*, and that said *Loomis* is entitled to receive from said arbitrators the note drawn by *G. J. Rice* and *E. S. Rice* for $300, dated *July* 25, 1862, deposited in the hands of the arbitrators, as mentioned in the foregoing articles of agreement, to abide the issue of this arbitration, and that the same be received by the said *Loomis* as a full and final settlement of all matters in difference between himself and *G. J. Rice*, and in full satisfaction and payment of all debts, claims or liabilities from said *Rice* to said *Loomis*, to this date.

" Witness, &c., this 28th day of *July*, 1862.

                         " JOHN LYTLE,

                         " F. KEYS."

It also appeared, that the account submitted by *Rice* to the arbitrators was that annexed to his complaint in this suit, and that he had no other, either against *C. C. Loomis*, or the *Uncas Woolen Mills*, or the defendant. That at the time of the submission neither *Rice* nor *C. C. Loomis* were solvent, and the parties, for the purpose of making secure any sum which might be awarded to either, each agreed to place a note for $300, with security, in the hands of the arbitrators, to be delivered as specified in the written agreement of submission, it not being supposed that the amount to be awarded would exceed $300; that the plaintiff accordingly made his note with *E. S. Rice* as surety, and *C. C. Loomis* gave a note executed by " *Loomis & Co.*," falsely and

fraudulently representing that the defendant in this suit, who was the proprietor of the *Uncas Woolen Mills*, of *Norwich, Connecticut*, and a man of large wealth, with *C. C. Loomis*, composed the firm of "*Loomis & Co.*," by which representation, and confiding in the truth thereof, the plaintiff was induced to execute the agreement of submission, and to litigate before the arbitrators; that in fact the defendant was not a member of said firm; that it was composed of *C. C. Loomis* alone, the "& Co." being used for the sole purpose of deception; that the plaintiff was not indebted to either *C. C.* or *F. B. Loomis*, but on the contrary, each of them is and was indebted to him; and that his said note for $300 was payable at a chartered bank in this State, and before maturity, and before his discovery of the fraud, had been passed into the hands of a third party. The answer alleged the submission and award, and the fraud in procuring the submission appeared by the reply.

An award derives its force from the voluntary agreement of the parties to submit the matter to arbitration. The right to litigate in court, and there to have a determination of a matter in dispute, according to the ordinary course of judicial procedure, is a sacred and substantial right, which a party can, however, waive by contract. A submission to arbitration is such a contract. If this be procured by fraud, it is, like any other contract so procured, of no force whatever, and not binding upon the party thus induced to enter into it. So far in the course of reasoning necessary to solve the question before us, there could probably be no diversity of opinion. But in the case in hand, it is not pretended that the decision of the arbitrators was itself influenced by the fraud, and it must also be admitted, in view of the fact that the award was against the present appellant, that he was at least in quite as good condition as if every fact falsely represented, to induce him to agree to the submission, had been strictly true. It is a plausible view of the case that he was not injured by the fraud, and can-

not, therefore, take advantage of it; but, in the opinion of
a majority of the court, there will be a substantial and se-
rious injury if the award shall be held to constitute a bar
to his action.   He has, as he alleges, a right to recover the
sum demanded in his complaint.   This is his undoubted
right, in view of the averments in the pleadings (which
must, on demurrer, be regarded as confessed), unless the
award bars his action.   It will not do to say that this is to
be regarded as not true, because the award determined that
it was not true.   The question is whether the submission
was valid.   If not, then the award determines nothing
which binds him; and the validity of the submission can-
not depend upon the nature of the award, when fraud is
alleged against the submission.   If the submission was, in
the  first  instance, not binding upon the appellant because
of fraud, no award which could subsequently be made un-
der it could impart validity to it, for the reason that with-
out a valid submission the arbitrators had no authority to
make an award.   Without jurisdiction no court can render
a binding judgment; without jurisdiction arbitrators can
make no binding award, and a valid submission is necessary
to give them jurisdiction.   That the submission bound the
appellant before the award was made can hardly be as-
serted, if the facts alleged in the reply be taken as true.

In the case before us, the answer was in confession and
avoidance, setting up the submission and award as a bar by
way of estoppel.   To avoid a liability admitted otherwise
to exist, it is pleaded.   The reply is that the submission was
procured by the fraud of the defendant, and hence that the
award does not bar.   The question arising upon demurrer
to the reply well justifies the language used by Lord MANS-
FIELD in *Montefiori* v. *Montefiori*, 1 W. Black. 364:  "No
man shall set up his own iniquity as a defense, any more
than as a cause of action."   The same principle was stated
by Lord COTTENHAM in *Hawkins* v. *Hall*, 18 Eng. Ch. 279,
that the author of wrong who has put a person in a posi-

tion in which he had no right to put him, shall not avail himself of his own wrong.

If the execution of the notes had been independent of the submission, and a mere mode of securing the performance of the award, the case would have been one of "fraud without damage," which could be of no avail to avoid the award. But the reply avers that the fraud alleged was influential in inducing the plaintiff to execute the submission itself. If the submission be held binding upon him it will bar his right of recovery, and thus work damage. It is not sufficient to say he had no right of recovery because the award so determines, and therefore he loses nothing. That would be reasoning in a circle, the argument running thus: "There was no fraud working injury, because the award was against him, and the award must stand, because there was no available fraud in procuring the submission; the nature of the award establishes the validity of the submission, and the validity of the submission makes the award conclude him." Estoppel, even by judgment against the party, and so also by award, does not proceed upon the ground that the tribunal could not err, and that having adjudged against the party conclusively establishes that he had no right of action. Upon that ground it would be conclusive proof against him under the general issue; but it has never been so held. An estoppel is where a man is concluded to aver the truth, and when it exists by award or judgment it rests upon a principle of public policy variously expressed and well understood. "A man shall not be twice vexed for the same cause." 3 Coke Rep. 61. *Interest reipublicæ ut sit finis litium.* But there can be no such estoppel unless the tribunal had jurisdiction, which, in case of an award, can only be conferred by valid consent, and this must be shown before the award can be held to possess any virtue whatever.

As applicable to the present question, and a very accurate statement of the law of the case, we adopt the language of a recent writer: "If the fraud be such that had it not

been practiced the contract would not have been made or the transaction completed, then it is material to it; but if it be shown or made probable that the same thing would have been done by the parties, in the same way, if the fraud had not been practiced, it cannot be deemed material." 2 Par. Con. 770, 5th ed.

There are innumerable cases to the effect that an award cannot be impeached collaterally. Many of them are collected in the valuable note, 408, of *Cowen* and *Hill,* to 2 Phil. Ev. 400. But it is there well said, that all the cases, as to the conclusiveness of awards, must be understood with the qualification that the arbitrators must have had jurisdiction. *Id.* 401. It is the submission which confers this jurisdiction. If the validity of the submission be successfully attacked, then the jurisdiction is wanting, and the award falls. Upon this point there is authority without conflict. *Bierly* v. *Williams,* 5 Leigh 700, was an action upon an award. The defense was, that the submission was procured by the fraud of the plaintiff. It was objected that the question could not be thus made collaterally. It was said by the court:

"Take away the submission and the arbitrators are without authority, and their award is a void and inofficious act. And this is equally the case, whether there has never been even the semblance of a submission, or that submission has been null and void for whatever cause, whether for infancy, coverture or fraud. * * * I know no authority which contravenes the right of the party to avail himself of the defense before that tribunal. No case to the contrary has been cited. * * * A court of law is as competent to the examination of it as a court of equity, and is equally bound to see that the very foundation of the plaintiff's demand is not false and unsound. If there be no agreement to submit, there is no cause of action, and if there be fraud, the agreement to submit is void and of no effect."

In the case before us the defendant pleaded, and must

.have proved, not only the award, but the agreement to submit. It would contravene the most elementary principles of pleading if the plaintiff might not question the validity of the very contract upon which the defendant rests his defense.

In *Britton* v. *Williams*, 6 Munf. 453, there was a reference, by agreement, by rule of court, and an award in favor of infants. It was held that exceptions to the award should have been sustained, because the infants could have avoided it, and so it was not obligatory on the other party, and the judgment upon the award was reversed. So in *Baker* v. *Lovett*, 6 Mass. 78—trespass by an infant—the defense being accord and satisfaction, and the replication infancy, in holding the latter good on demurrer, the court said: "If he submit his rights to arbitration, he will not be bound by the award."

*Rumsey* v. *Leek*, 5 Wend. 20, was an action upon a promissory note. Certain matters of difference between a *feme covert* and *Rumsey* had been by them submitted to arbitration; notes were made by each, payable to the other, and placed in the arbitrators' hands; that of the party against whom the award should be, to be reduced by credit to such sum as might be awarded, and then both notes to be delivered to the successful party. The note sued on was that so made by *Rumsey*, against whom the award was, and delivered in pursuance of the submission. It was held that these facts showed that there was no legal submission, and therefore no authority to make the award, and that there could be no recovery on the note.

It has been repeatedly held that in a suit upon a judgment, certainly as conclusive as an award, want of jurisdiction in the court which rendered the judgment may be pleaded in bar. The cases to this effect are so numerous that they need not be cited at large. Some of them are collected in *Horner* v. *Doe*, 1 Ind. 130, where it is said, "that it may be regarded as settled, that a judgment of any court, in a suit requiring ordinary adversary proceedings, that ap-

pears upon its face, or may be shown by evidence—in a case where it may be shown—to have been rendered without jurisdiction having been acquired, by notice, of the person of the defendant, or without jurisdiction of the subject-matter, is void, and may be treated as being so when it comes in question collaterally."

The judgment is reversed, with costs, and the cause remanded, with directions to overrule the demurrer to the first paragraph of the reply.

ELLIOTT, J., *dissenting.*—*Rice* sued *Loomis* on an account for work and labor, &c. *Loomis*, in his answer, set up the agreement of submission and award, set out in the opinion of FRAZER, C. J., in bar of the action, and alleged that the account now sued on was presented by *Rice* before said arbitrators and settled in said award; to which *Rice* replied, in substance, that he was induced to enter into the agreement of submission and the arbitration referred to by the false and fraudulent representation of *C. C. Loomis* that *Francis B. Loomis*, who, it is alleged, was solvent and possessed of large means, was a member of the firm of *Loomis & Co.*, the name in which the note deposited with the arbitrators to secure any sum that might be awarded in favor of said *Rice* was executed, when, in truth, said alleged firm consisted of *C. C. Loomis* alone, who was wholly insolvent, and that had he known that *Francis B. Loomis* was not a member of said firm, he would not have entered into said agreement or arbitration. It further denies that *Rice* was indebted in any sum whatever to either *C. C. Loomis* or *Francis B. Loomis*. A demurrer was sustained to the replication. The correctness of that ruling is the question here.

It is well settled that a valid award extinguishes the original demand or cause of action, and is a bar to any subsequent suit on such demand. This is not controverted. An award, like a judgment or decree in a court of record, is conclusive upon the parties in any subsequent contest in-

volving the same matter; and it has been repeatedly held by this court that a judgment of a court having jurisdiction of the parties and of the subject of the action is conclusive upon the parties thereto and their privies, and cannot be impeached, even for fraud, in a collateral suit where it may come in question. The same rule is applicable to an award, which is a final adjudication and settlement of the matters in controversy between the parties, by a tribunal chosen by themselves, and to which they have, by agreement, voluntarily submitted.

*Hough* v. *Beard*, 8 Blackf. 158, was a suit upon an award, and on the trial the defendant, to impeach the award, offered to prove certain misconduct of the arbitrators in making it. It was held that in such a suit the misconduct of the arbitrators in making the award was no defense, for the reason that the award could only be impeached for the misconduct of the arbitrators by a suit in chancery.

In the case of *The Whitewater Valley Canal Co.* v. *Henderson*, 3 Ind. 3, *Henderson* sued on an award made in his favor for the damages resulting to him by the construction of the canal over his land. A plea was filed alleging that one *Jenks*, the former owner of the land, and from whom *Henderson* derived title, had executed a release to the State for the right of way for said canal over said land, and of all damages thereto, which release had been filed in the office of the Secretary of State, as required by law; that said *Henderson* had fraudulently concealed from the canal company the execution and existence of said release until long after the date of said award, said company having no knowledge that the same had ever been executed. In the decision of the question as to the sufficiency of the plea to bar the action, it was said by SMITH, J., in reference to the averment that *Henderson* had fraudulently concealed from the defendant the fact of the execution and existence of the release, that " it is unnecessary now to decide whether this averment adds anything to the sufficiency of the plea, though we are of opinion that it does not. It has been

heretofore decided by this court, that, in an action on a judgment, a plea that the judgment was obtained by fraud is insufficient; *Hutton* v. *Denton*, 2 Ind. 644; and, also, that in an action on an award, the award cannot be impeached for misconduct of the arbitrators. The proper remedy, in either case, is by bill in chancery to have the judgment or award set aside. *Hough* v. *Beard*, 8 Blackf. 158; *Elliott* v. *Adams, id.* 103."

The doctrine on this subject is fully, and, in my judgment, correctly stated in note 408, in 2 Phil. Ev. 400, where, among other things, it is said that "an award of arbitrators decides the rights of the parties as effectually as a judgment at law or a decree in chancery, and is as binding, until regularly set aside, or its validity questioned in a proper manner. When not made under a rule of court, it may be annulled by a decree in chancery, on a bill showing corrupt practices of the arbitrators or parties, or the mistake of the former, or any accident or proper ground for a new trial attending the case of the losing party. But he can never overleap it, treating it as void, and litigate his right anew, by commencing an action as if it had not been made, and in a collateral manner attack its validity. *Bulkley* v *Stewart*, 1 Day's R. 130, 132, 133."

"That at common law, the award of arbitrators regularly made, and in relation to a matter which might be submitted, is conclusive between the same parties in a contest involving the same matter, is a proposition too well settled to need illustration by the citation of authorities." *Shackleford* v *Purket*, 2 Marsh. 435.

Judgments may be impeached for fraud, by a direct proceeding for that purpose, in the nature of a bill in chancery, under our present practice, but they are conclusive upon the parties when brought in issue collaterally. This position is fully sustained by authority and reason as well as sound public policy. Courts are organized to adjudicate, try, and settle questions of controversy between parties. Policy requires that a cause once litigated and re-

duced to a judgment in a court of competent jurisdiction, should there terminate and the judgment should be conclusive, unless reversed by an appellate court or set aside for some adequate reason, in a proper proceeding instituted for that purpose; but if the validity of a judgment may be attacked by evidence *aliunde* every time it may be brought in question collaterally in some other suit, there would be no end to litigation. The sanctity and conclusive character of judgments would be destroyed, and they would cease to be respected as the final settlement of controversies.

Arbitration is but another mode of settling disputes. The parties, instead of appealing to an organized court, by mutual agreement create a forum for themselves, and select their own judges, who are called arbitrators, for the trial of the matters in dispute between them, and the award made by them, upon the matters so submitted, is, as we have seen, as conclusive upon the parties as a judgment rendered by a court of competent jurisdiction. The award may be impeached in the same manner as a judgment; but the same reasons of justice and of public policy which forbid that a judgment should be attacked collaterally, apply with equal force to an award, and that such is the law, both in *England* and in this country, is clearly shown by the authorities. *Elmendorf* v. *Harris*, 5 Wend. 516; same case, 23 Wend. 628; *Preston* v. *Whitcomb*, 11 Verm. 47.

I am not unmindful of the fact that it was said in *Carson* v. *Earlywine*, 14 Ind. 256, that, "beyond doubt, under our present practice, all objections that could be successfully urged, either at law or in chancery, against an award, may now be made in a suit upon it." There the suit was on the award, and the answer alleged misconduct and fraud on the part of the arbitrators. It is admitted in the opinion in the case that, at common law, such a defense was unavailable, and the party would have been compelled to seek his relief in chancery. The opinion is based on the change of practice under the code. The question is not discussed. The proposition is simply announced, in the language above

quoted, and then it is said: "But this topic need not be pursued, as no evidence in support of the allegations in the answer was offered on the trial, and the submission and award, which were not denied, but which were nevertheless proved, made out a *prima facie* case for the plaintiff." It may be conceded that the proposition as stated is substantially correct. The code abolishes the distinction between actions at law and suits in equity, and provides that the defendant may set forth in his answer as many grounds of defense, whether legal or equitable, as he shall have. And where the action is brought upon the award it becomes the direct subject of litigation, and, if impeachable for fraud, I do not doubt the right of the defendant, under the code, to set up the fraud in an answer in the nature of a bill in equity, or a cross-complaint, and ask to have it set aside. Such an answer, under the code, would be in the nature of an original bill in chancery, and would perform the same office under the present practice as would have been performed by a bill in equity under the old, and, if successful, the court in its final judgment should set aside the award as fraudulent. The same defense, with the same result, might, under the code, be made in an action on a judgment impeachable in equity for fraud. But here the action is not brought on the award, but on an account, which — and not the award — is the subject of litigation.

The complaint is silent as to the award, and seeks to recover a judgment on the account only. The award is not set up as a set-off, nor is any affirmative relief demanded on it. It is set up, in connection with other averments, as a bar to the action on the account, by showing that the same demand was passed upon and settled by the arbitrators and concluded by the award. The plaintiff might, under our present practice, have filed his complaint to set aside the award, and at the same time have asked a judgment on the account. The award is valid on its face, it is not void, even though fraudulent, but only voidable, and he cannot overleap it, "treating it as void, and litigate his rights anew, by

commencing an action as if it had not been made, and in a collateral manner attack its validity." Such a practice would tend to confusion, and lead to the most pernicious consequences. Where the answer contains new matter, the plaintiff may reply any new matter thereto not inconsistent with the complaint. But the original cause of action is merged in the judgment or award, until it is set aside for the fraud. The judgment or award is, therefore, a good bar to the action for the same cause, so long as it remains in force. And the plaintiff by suing on the original cause of action, without attacking the award in his complaint, and then attacking it in the replication, makes the latter inconsistent with the complaint. It must be borne in mind, that the award is not pleaded as a set-off, nor is any affirmative relief asked upon it. It had been performed by *Rice*, and is set up as a bar to the action, simply because the account sued on had been litigated and settled in the arbitration.

It seems to me equally clear that *Rice* was not, in any manner, injured by the alleged fraud, and has nothing, therefore, to complain of. If a fraud was practiced as alleged, it was a "fraud without damage," and it is well settled that fraud to be available, as a ground of relief, must have worked an injury to the party setting it up. Here the alleged fraud had no relation to the controverted matters submitted to the arbitrators, nor to the conduct of *C. C. Loomis* on the trial, nor to the conduct of the arbitrators in making the award. It is not claimed by *Rice* that he did not have a fair and impartial trial. It is true, that he alleges he did not owe either of the *Loomis'* anything, but that averment, of itself, amounts to nothing. The question of his indebtedness was submitted to the arbitrators, who found against him, and that finding is in nowise impeached, and must be presumed correct. It is not pretended that the decision of the arbitrators was, or could be, in any manner influenced by the alleged fraud. The representations complained of related alone to the security of the note

executed by "*Loomis & Co.*," to be delivered to *Rice* in the event the arbitrators found in his favor, but as that finding was against him, how can it be said that he was injured?

The proper rule, in cases like this, to test the question of injury, I conceive to be this: Is the party placed in a worse condition by the false representation than he would have been had the representation been true? Tested by this rule, it is evident that no injury resulted to *Rice* by the alleged fraud, and hence he has nothing to complain of.

But it is said that the alleged fraud rendered the submission void, and that the award is therefore void for want of jurisdiction in the arbitrators. This is simply begging the question. It must be conceded that a void submission confers no jurisdiction on the arbitrators named therein; but the question whether the submission in this case was rendered void by the false representations complained of, is the very question in controversy, and which, in my opinion, should be answered in the negative.

The false representation as to who constituted the firm of "*Loomis & Co.*," at most only rendered the agreement of submission voidable, not absolutely void; and as the parties went to trial and suffered the award to be made under it, it could not afterwards be avoided by *Rice*, unless it appeared that he was injured by the alleged fraud, and as he was not so injured, he cannot avoid the award.

I cannot, therefore, concur in the opinion of the majority of my brother judges.

*D. D. Pratt* and *D. P. Baldwin*, for appellant.

*E. Walker*, for appellees.