**W. Edward THOMPSON, Appellant,**

v.

**Sandy V. LEE, et al., Appellees.**

**No. 89–882.**

District of Columbia Court of Appeals.

Argued Feb. 12, 1991.
Decided April 16, 1991.

Julie A. Thompson, with whom Edward Greensfelder, Jr. was on the brief, for appellant.

Blaine A'mmon White, for appellees.

Before ROGERS, Chief Judge, and TERRY and FARRELL, Associate Judges.

FARRELL, Associate Judge:

In this appeal we reverse the denial of a motion to confirm an arbitration award. We remand for a determination by the trial court, upon an adequate evidentiary foundation, of whether there was fraud in the inducement of the Settlement Agreement which gave rise to the arbitration and the ensuing arbitration award, and hence whether confirmation of the award could properly be denied.

## I.

On January 18, 1988, former law partners W.E. Thompson, on the one hand, and Sandy V. Lee and Edwin H. Harvey (Lee & Harvey), on the other, executed a "Settlement Agreement" which resolved their disputes over the distribution of certain contingent fees received by their dissolved law partnership.[1] Paragraph 3 of the Settle-ment Agreement provided for the division of fees collected in the cases of certain clients listed by Lee & Harvey (Exhibit A to the Settlement Agreement) and by Thompson (Exhibit B to the Settlement Agreement). Paragraph 3(d) provided an exception to the Agreement's general scheme of distribution:

> The $150,000.00 attorney's fee received by Thompson from the case of Julio Gonzales shall not be taken into account in the income or expense of the Partnership and shall not be divided according to the terms of this Agreement, except as set forth in this subparagraph (d) of paragraph 3, as follows: at the time of the execution of this Agreement, Thompson shall pay Harvey $30,000; and Thompson shall be entitled to retain all of the remaining amount.

Paragraph 9 of the Settlement Agreement provided in relevant part:

> Any dispute arising under this Agreement shall be submitted to binding Arbitration before a single arbitrator according to the rules of the American Arbitration Association and shall be decided by the single arbitrator upon written submissions and a single summary oral argument to be presented by the parties or their representatives without an evidentary [sic] hearing, it being the parties' purpose to achieve an amicable final resolutation [sic] of their disputes without further delay or undue expense. . . .

On August 8, 1988, after disputes had arisen, Thompson demanded arbitration concerning payment of his share of the contingent fees. On September 27, 1988, during discovery in the arbitration proceeding, Lee & Harvey claim to have found evidence of a $220,000 payment to Thompson for fees in the *Gonzales* case. This amount conflicted with Thompson's statement in paragraph 3(d) of the Settlement Agreement that there was a "$150,000.00 attorney's fee received by Thompson from the case of Julio Gonzales."

---

1. Those disputes had previously led Thompson to file a lawsuit against Lee & Harvey in the United States District Court for the District of Columbia. The suit was dismissed with prejudice after the parties voluntarily entered into the Settlement Agreement.

This and other purported discoveries led Lee & Harvey to file "counterclaims" before the arbitrator in which they asserted that they had been fraudulently induced into entering the Settlement Agreement by (1) Thompson's alleged misrepresentations about the *Gonzales* fee, and (2) Thompson's failure to list fully in Exhibit B of the Settlement Agreement the clients as to whom Lee & Harvey were entitled to payment. Although raising the issue of fraudulent inducement, Lee & Harvey informed the arbitrator that in their view he lacked authority under the arbitration clause to resolve this issue, which could only be decided by a court. The arbitrator ultimately agreed that the claims of fraud were not "within the scope of the Arbitration Clause" and dismissed those claims.

The arbitrator issued an award in Thompson's favor on April 24, 1989. The portions of the award at issue in this appeal are chiefly (1) two awards to Thompson—$75,765.60 (for fees collected during the existence of the partnership) and $81,674.55 (for fees collected after dissolution)—and (2) the denial of an award to Lee & Harvey for an additional portion of the *Gonzales* fee, the amount of which the arbitrator ruled "could not have been determined without an evidentiary hearing, which is prohibited by the Arbitration Clause." Lee & Harvey filed a "Motion to Vacate, Modify and Correct Arbitrator's Award" which the arbitrator denied on June 21, 1989.

On June 30, 1989, Thompson filed a "Motion for Order to Confirm Arbitration Award" in Superior Court. On July 12, 1989, Lee & Harvey filed an opposition which combined a jurisdictional argument for dismissal of the motion to confirm, a request to stay the Superior Court proceedings, and an argument against confirmation on the merits on grounds which included the claim of fraud in the inducement of the Settlement Agreement.[2] On July 31, 1989, Judge Hannon denied the motion to confirm and vacated the arbitrator's award,

and subsequently denied Thompson's motion to reconsider. Thompson appeals from these rulings.

## II.

D.C.Code § 16–4310 (1989) provides that, "Upon application of a party, the Court shall confirm an [arbitration] award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award...." Thompson first contends that Lee & Harvey made no such application to vacate the arbitrator's award. We disagree.

In *Walter A. Brown, Inc. v. Moylan*, 509 A.2d 98 (D.C.1986), this court held that

[t]here are two ways in which a party may present reasons for vacating an award: (1) by filing a petition with the trial court to vacate the award; or (2) by raising reasons supporting vacation in an answer to the other party's petition to confirm.

*Id.* at 99. Although Lee & Harvey did not file a motion to vacate the award, they filed within the required time period an opposition to Thompson's motion to confirm the award. The opposition stated two grounds: (1) "[t]hat the motion of [Thompson] is not provided for by any rule or statute which would vest this Court with jurisdiction over these matters"; and (2) that because Lee & Harvey "have filed an application/motion to vacate, modify and/or correct Arbitrator's award in this matter in the United States District Court for the District of Columbia," see note 2, *supra*, "the proceeding herein must be stayed and/or dismissed until the resolution" of that application. Neither contention was accompanied by supporting argument, and we conclude neither had merit.

■ Both arguments appear to have rested on, first, the bare fact that Thompson had initially sued Lee & Harvey in federal district court, see note 1, *supra*, and second, the assertion that federal arbi-

---

**2.** On the previous day, Lee & Harvey had filed a motion to vacate the arbitration award in the United States District Court for the District of Columbia under the same case number as the

earlier suit, which had been dismissed with prejudice. See note 1, *supra*. The record does not indicate what became of that motion.

tration law would apply to resolve this controversy. Thompson's federal suit, however, had been dismissed with prejudice by consent of the parties upon execution of the Settlement Agreement, and the fact that Lee & Harvey had since moved to vacate the arbitration award in the same now-dismissed federal action could not oust the Superior Court of jurisdiction which it otherwise possessed. Nor did federal law necessarily govern this arbitration dispute. The federal arbitration law applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2 (1988); *see Coles v. Redskin Realty Co.*, 184 A.2d 923 (D.C. 1962). Lee & Harvey did not argue to the Superior Court that this case evidenced a transaction involving interstate commerce, and the trial court judge made no such finding.[3] Lee & Harvey thus failed to demonstrate that the Superior Court lacked jurisdiction to confirm the arbitration award under the applicable District of Columbia statute.

■ In addition to the reasons for opposing confirmation stated on its face, however, Lee & Harvey's opposition attached and incorporated by reference the motion to vacate the arbitration award filed the previous day in federal district court, see note 2, *supra*, and stated that this motion would "act as [Lee & Harvey's] memorandum of points and authorities here." The attached motion and supporting memoran-

dum set forth, *inter alia*, the argument that the arbitration award should be vacated because of Thompson's alleged fraud in procuring the Settlement Agreement. Although this manner of pleading did not highlight for Judge Hannon's attention fraud as a ground for denying confirmation, we conclude that Lee & Harvey, in addition to their jurisdictional argument, were "asking for the affirmative relief of having the arbitration award vacated" on grounds of fraud. *Walter A. Brown, Inc. v. Moylan*, 509 A.2d at 99.

### III.

We thus turn to Thompson's primary argument on appeal, which contests Lee & Harvey's right to oppose confirmation of an arbitration award on the ground, not that the award itself "was procured by corruption, fraud or other undue means," D.C.Code § 16–4311(a)(1), but that the underlying agreement containing an arbitration clause was the product of fraudulent inducement.[4]

■ The authority of courts to interfere in contractually mandated arbitration proceedings is governed by arbitration statutes. *See* District of Columbia Uniform Arbitration Act, D.C.Code §§ 16–4301 *et seq.* (1989); 9 U.S.C. §§ 1 *et seq.* (1988) (federal arbitration statute); Uniform Arbitration Act, 7 U.L.A. 1 (1956) (the Act).[5]

---

3. We therefore need not opine on whether federal jurisdiction would in any event have been concurrent with state court jurisdiction of the controversy.

4. Lee & Harvey urged vacation of the award on other grounds as well and renew those grounds here. We find none of them meritorious. Without reference to any statutory standards for vacating awards, they argue that the arbitrator denied them "due process" by conducting the arbitration without an evidentiary hearing. "If [an arbitration agreement] specifies methods of procedure for the arbitration, the arbitrator[ ] will be bound to that procedure unless it is in violation of law or public policy." *Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Employees v. Connecticut Co.*, 142 Conn. 186, 191, 112 A.2d 501, 503 (1955). Waiving the right to present witnesses and cross-examine witnesses at the arbitration hearing, Lee & Harvey expressly agreed to the arbitration clause permitting a single arbitrator to resolve issues "upon

written submissions and a single summary oral argument ... without an evident[i]ary hearing." Since there was no assertion that this method of arbitration was prohibited by law or policy, the procedure designated by the parties was binding on the arbitrator, who cannot be faulted for complying with the procedure set by the parties.

Nor did Lee & Harvey's claims of wrongful dissolution of the partnership and wrongful eviction (claims merged in the Settlement Agreement) or of related misconduct and "bar problems" of Thompson "over the years" provide a colorable basis for setting aside the arbitrator's award.

5. As explained above, Lee & Harvey never sought to demonstrate below that federal arbitration law governs the dispute in this case. On appeal neither party disputes that District of Columbia law may be applied in this case, and we proceed on that basis.

Before 1977, common law rules regarding judicial interference in arbitration proceedings

Section 3 of the Act, D.C.Code § 16–4302, governs pre-arbitration court proceedings. A party to a contract may obtain a court order requiring the opposing party to arbitrate according to the contract. § 3(a), D.C.Code § 16–4302(a). "[B]ut if opposing party denies the existence of the agreement to arbitrate, the Court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied." *Id.* A party may also force arbitration by obtaining from the court a stay of a pending lawsuit "involving an issue subject to arbitration." § 3(d), D.C.Code § 16–4302(d). If, however, arbitration proceedings have commenced and the party opposing arbitration shows the court that no agreement to arbitrate exists, the court may stay the arbitration proceeding. § 3(b), D.C.Code § 16–4302(b). "Such an issue [existence of an agreement to arbitrate], when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party." *Id.* Thus, under § 3 of the Act, a party may obtain a judicial determination regarding the existence of an agreement to arbitrate.

■ Claims of fraudulent inducement of the agreement containing an arbitration clause are among those determined under § 3 of the Act. *See, e.g., Hercules & Co. v. Shama Restaurant Corp.*, 566 A.2d 31 (D.C.1989) (after trial court concluded that allegations of fraud in the inducement of the agreement and allegations of fraud in the inducement of the arbitration clause were insufficient as a matter of law, court stayed its proceedings pending arbitration). In effect, such claims dispute the existence of an agreement to arbitrate. Courts often refuse to reach the merits of the claims of fraudulent inducement and require that those issues be resolved by the arbitrator when the arbitration clause has a broad scope and the clause itself is not a product of fraud. *See* G. WILNER, DOMKE ON COMMERCIAL ARBITRATION ch. 8 (1984); Annotation, *Claim of Fraud In Inducement of Contract as Subject To Compulsory Arbitration Clause Contained In Contract*, 11 A.L.R. 4th 774 (1982).

■ Claims of fraudulent inducement of a contract also may be asserted in a properly filed application to vacate the arbitration award.[6] In *Security Constr. Co. v. Maietta*, 25 Md.App. 303, 334 A.2d 133 (1975), for example, a construction company (Security) learned during arbitration proceedings that Maietta had engaged in allegedly fraudulent conduct before the agreement was

applied in the District of Columbia. *See Brandon v. Hines*, 439 A.2d 496, 501 n. 2 (D.C.1981). In 1977, the District of Columbia adopted the Uniform Arbitration Act, which applies to agreements "made subsequent to its enactment." D.C.Code § 16–4318. The Settlement Agreement in this case was signed in 1988, and thus the arbitration statute governs. The District of Columbia statute "shall be construed as to effectuate its general purpose of making uniform the law of the District of Columbia and those states which enact it." D.C.Code § 16–4319. Accordingly, the statutory references in this opinion will be to the Uniform Arbitration Act with parallel citation to the District of Columbia Uniform Arbitration Act.

6. Section 12 of the Uniform Arbitration Act, D.C.Code § 16–4311, provides the criteria for "Vacating an award":
　(a) Upon application of a party, the Court shall vacate an award where:
　　(1) The award was procured by corruption, fraud or other undue means;
　　(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
　　(3) The arbitrators exceeded their powers;
　　(4) The arbitrators ... refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of [Section 6, D.C.Code § 16–4305], as to prejudice substantially the rights of a party; or
　　(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under [Section 3, D.C.Code § 16–4302] and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a Court of law or equity is not ground for vacating or refusing to confirm the award.
　(b) An application under this section shall be made within ninety days after delivery of a copy of the award to the applicant, except that if predicated upon corruption, fraud or other undue means, it shall be made within ninety days after such grounds are known or should have been known.

signed which induced Security into entering the agreement. The arbitrator issued an award in favor of Maietta, who then sought confirmation in state court. Security filed a lawsuit in federal district court to rescind the agreement and attempted in state court to obtain injunctive relief from confirmation of the award. The trial judge entered judgment in favor of Maietta. On appeal, the Maryland court rejected Security's argument "that the arbitration award could not be confirmed or considered final because of an unresolved issue of fraudulent inducement and that Security had an absolute right to have that issue determined" in a separate action. The court held that the merits of Security's fraudulent inducement claim could have been considered by the trial court on a petition to vacate the arbitrator's award, because "absent a claim that the fraudulent inducement pertains to the arbitration clause itself, an attack on an arbitration award on the ground that the contract upon which the award is based was fraudulently induced, must be brought solely in accordance with [Maryland's version of § 12(b) of the Uniform Act]." *Id.* at 307–08, 334 A.2d at 136. The court reasoned:

> While [Maryland's version of § 12(b) of the Uniform Act] does not specifically refer to "fraudulent inducement", we think the legislative use of the phraseology "corruption, fraud or other undue means" to be sufficiently broad to include "fraudulent inducement" within its ambit. Fraudulent inducement to enter into a contract that is governed by the "Maryland Uniform Arbitration Act" does not give rise to a separate and distinct cause of action without the scope of

the provisions of the Act, unless it can be shown that the arbitration clause itself was induced by fraud.

*Id.* (footnote omitted). Unfortunately for Security, it had failed to honor the time limits set by Maryland's statute and, therefore, the award was confirmed.

Section 12(a) of the Act provides five grounds for vacating awards: (1) the award was procured by the fraud or misconduct "of the opposing party or, possibly, of some persons other than the arbitrator"; (2) the arbitrator was partial; (3) the arbitrator exceeded his or her power; (4) the arbitrator conducted an unfair hearing in violation of certain procedural requirements of the Act; and (5) the existence of the agreement is disputed and not settled in a § 3 proceeding and the party opposing the award raised the objection before the arbitrator. Pirsig, *Some Comments on Arbitration Legislation and the Uniform Act*, 10 VAND.L.REV. 685, 704–07 (1957). See note 6, *supra*. Several courts have recognized the applicability of subsections (3) and (5) to claims of fraudulent inducement or analogous attacks upon the validity of the underlying agreement.[7]

In *Bloom v. Landy*, 72 Ill.App.3d 383, 27 Ill.Dec. 878, 389 N.E.2d 1286 (1979), Landy and Goldman, two former partners of an accounting partnership, disputed the division of partnership assets after dissolution. Landy demanded arbitration under their Partnership Agreement. Goldman initially opposed arbitration in court, claiming that he was fraudulently induced into entering the Partnership Agreement by misrepresentations of Landy and others. The court

---

**7.** Subsection (1), relating to an award "procured by corruption, fraud or other undue means," § 12(a)(1), D.C.Code § 16–4311(a)(1), by contrast, has been held to cover fraudulent conduct that transpired during the arbitration proceedings. *See, e.g., Grudem Bros. Co. v. Great Western Piping Corp.*, 297 Minn. 313, 213 N.W.2d 920 (1973) (alleged violation of collateral agreement not to use attorneys during arbitration proceedings and alleged perjury); *Crosby–Ironton Fed'n of Teachers, Local 1325 v. Independent School Dist. No. 182*, 285 N.W.2d 667, 670 (Minn.1979) (during arbitration ex parte contacts made "orally or in writing, in regard to issues under dispute, without notifying all other parties to

the dispute, will raise a strong presumption that the ultimate award made was procured by corruption, fraud or other undue means, and thus subject to vacation").

In his law review article cited above, the chairman of the committee of the National Conference of Commissioners on Uniform State Laws which drafted the Uniform Act, recognized that subsections (3) and (5) can be combined for purposes of analysis because they are "corollaries of each other. If there has been no arbitration agreement, the arbitrators, of course, have no power to render an award." Pirsig, *supra*, 10 VAND.L.REV. at 705.

permitted the arbitration proceeding, during which Goldman again attacked the validity of the partnership agreement, but the arbitrator ruled that he lacked jurisdiction to resolve the fraudulent inducement claims and issued an award in favor of Landy. When Landy petitioned the court for confirmation of the award, Goldman responded by contending "that he had not been afforded a hearing on the validity of the Partnership Agreement, and more particularly on the fraud in the inducement issue, and, therefore, the petition to confirm should be denied." *Id.* at 391, 27 Ill.Dec. at 885, 389 N.E.2d at 1293. The trial court confirmed the arbitration award. On appeal, the Illinois court held that Goldman's claim could be resolved in a properly filed application to vacate under Uniform Arbitration Act §§ 12(a)(3) (arbitrator exceeded power), 12(a)(4) (unfair hearing), and 12(a)(5) (lack of agreement), but sustained the order of confirmation because Goldman—like Security in the case discussed earlier—had filed his application out of time. *Id.* at 395, 27 Ill.Dec. at 888, 389 N.E.2d at 1296.[8] *See Jaffe v. Nocera*, 493 A.2d 1003, 1008–09 (D.C.1985).

We hold that subsections 12(a)(3) and 12(a)(5) of the Uniform Act, D.C.Code §§ 16–4311(a)(3) and (a)(5), furnish a proper basis on which Lee & Harvey could oppose confirmation of the arbitrator's award on the ground that the Settlement Agreement as a whole stemmed from Thompson's asserted fraudulent inducement. This accords with both the common law of arbitration and federal arbitration law. At common law "an arbitration agreement induced by fraud, overreaching, undue pressure or essential unfairness might infect the consummated award with invalidity." *Rueda v. Union Pac. R.R.*, 180 Or. 133, 168, 175 P.2d 778, 792 (1946); *see Stockton Combined Harvester & Agricultural Works v. Glens Falls Ins. Co.*, 98 Cal. 557, 33 P. 633 (1893); *Rice v. Loomis*, 28 Ind. 399 (1867). In *Rice*, one Rice, who was Loomis' creditor, sued to vacate an arbitration award in favor of Loomis on the ground that he had been fraudulently induced to consent to the arbitration agreement by Loomis' false representations that he was a rich man and a member of "Loomis & Co." Rejecting the argument that "a valid award extinguishes the original demand or cause of action, and is a bar to any subsequent suit on such demand," the court of appeals held that even though there was no claim that "the decision of the arbitrators was itself influenced by fraud," an agreement to arbitrate procured by fraud, "like any other contract so procured, *[is] of no force whatever*, and not binding upon the party thus induced to enter into it." *Id.* at 404, 409 (emphasis added).[9] *See also Hollywood Credit Clothing Co. v. Gibson*, 188 A.2d 348, 349 (D.C.1963).

---

8. *See also Best Coin–Op, Inc. v. Clementi*, 120 Ill.App.3d 892, 897, 76 Ill.Dec. 403, 407, 458 N.E.2d 1057, 1061 (1983) (determination of validity of underlying lease "not a prerequisite to proceeding with the arbitration" and may be raised in a properly filed petition to vacate under § 12(a)(5)); *Sheahan v. School Comm. of Worcester*, 359 Mass. 702, 270 N.E.2d 912 (1971) (under § 12(a)(5) appellate court reversed confirmation of arbitration award because of invalidity of arbitration agreement); *Joder Bldg. Corp. v. Lewis*, 153 Vt. 115, ——, 569 A.2d 471, 473–74 (1989) (under § 12(a)(5) enforceability of arbitration agreement may be raised in court after award if issue is first raised before arbitrator).

9. Similarly, in *Stockton* a fire partially destroyed Stockton's property, and the dispute over the amount of money owed by several insurance companies to Stockton was resolved by arbitration. Because Stockton represented to the insurers that it had no books or records showing the value of the property lost, the insurance companies agreed to submit to arbitration a loss fixed at $90,000. In fact, Stockton had possession of such records and the loss was "very much less than the amount fixed by the award." After an award was issued in favor of Stockton, the trial court entered judgment for Stockton, rejecting the insurance company's fraudulent inducement challenge to the validity of the arbitration agreement and the award. 98 Cal. at 571, 33 P. at 635. The Supreme Court of California reversed, holding that Stockton's concealment of its records was a misrepresentation and "a substantial inducement" to the insurers' pre-arbitration actions of waiving contractual rights to an appraisal of the loss and consenting to the fixed $90,000 amount. The court reasoned that "the award can have no greater force than the agreement upon which it is based; and, if the consent of [the insurance company] and other insurers was not fairly obtained, then the award is not binding upon [the insurance company]." *Id.*

Likewise, under the federal arbitration act, "any defenses [that] could have [been] raised under the statutory proceeding for an order directing arbitration to proceed in accordance with the contract under [9 U.S.C. § 4]" can be raised as defenses in a suit to confirm an award under 9 U.S.C. § 9. *Kentucky River Mills v. Jackson,* 206 F.2d 111, 120 (6th Cir.), *cert. denied,* 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392 (1953). "Such defenses would include invalidity of the contract, duress, and fraud in its procurement." *Id.*

Under the Uniform Arbitration Act, Lee & Harvey could have raised the issue of fraud in court before arbitration began (§ 3) or after the issuance of an unfavorable award (§ 12). *Bloom, supra.* They initially raised the issue with the arbitrator, though not opposing his decision not to reach it, and renewed the claim in court as part of the challenge to confirmation of the award. *Id.* In essence they maintained that the arbitrator had exceeded his authority by issuing an award pursuant to a settlement agreement void through fraud. These were proper grounds under §§ 12(a)(3) and (a)(5) of the Act to oppose confirmation.

## IV.

The final question for decision is whether, on the present record, this court can sustain the trial court's refusal to confirm the arbitration award without more. At the outset, we are met with the fact that Judge Hannon gave no reasons for denying the motion to confirm; hence we do not know whether he did so on the—erroneous—jurisdictional grounds cited by Lee & Harvey or whether, looking to the claim of fraud embedded in the appended motion filed in federal district court, he denied confirmation on the merits.[10] Even assuming that he credited Lee & Harvey's claims of fraud, the record before him was inadequate to support that determination. Lee

& Harvey asserted that Thompson had severely understated the amount of the *Gonzales* fee and omitted cases from Exhibit B to the Settlement Agreement. Presumably because their principal argument was that the validity of the arbitration award should be resolved in federal court, they attached no affidavits or other documentation shedding material light on the issue of fraud, nor did they request an evidentiary hearing. Thompson, for his part, responded by addressing only Lee & Harvey's argument for dismissal or stay pending the federal court proceedings, until the judge denied the motion to confirm and Thompson then replied on the merits in a request for rehearing. He asserted, among other things, that the record before the arbitrator contained "unrefuted evidence" that Thompson had received only $150,000 in fees in the *Gonzales* case and that the additional amounts received in settlement of that claim "were paid for expenses of Mr. Gonzales' subrogation claims and to Mr. Gonzales." Thompson denied that any misrepresentations underlay the Settlement Agreement. The "unrefuted evidence" to which he referred was not made part of the record before the trial court.

On this record, we have no choice but to vacate the denial of the motion to confirm and remand the case for reconsideration of Lee & Harvey's claim of fraud on an amplified record. Fraud in the context of arbitration awards must be established by clear and convincing evidence, *e.g., Bonar v. Dean Witter Reynolds, Inc.,* 835 F.2d 1378, 1383 (11th Cir.1988),[11] and as the party alleging fraud as a ground on which to deny confirmation, Lee & Harvey had the burden of proof on the issue. At oral argument they urged that Thompson's failure to rebut the claim of fraud (or to request a hearing on the issue) until the judge had ruled left Judge Hannon with no choice but to accept the allegations. We reject this argument given (1) the uncertainty whether the judge even ruled on the

---

**10.** A third possibility is that he denied the motion on other grounds *stated in Lee & Harvey's motion, which, as we have held, furnished no basis for setting aside the award. See note 4, supra.*

**11.** *See also Hercules & Co., supra,* 566 A.2d at 39 n. 16.

basis of these allegations and (2) the oblique manner in which Lee & Harvey advanced fraud as a reason for denying confirmation. Moreover, without even affidavits of the parties the judge had no basis on which to resolve the issues of state of mind crucial to a claim of fraudulent inducement. *See Greene v. Gibraltar Mortgage Inv. Corp.*, 488 F.Supp. 177, 179 (D.D.C.1980); RESTATEMENT (SECOND) OF CONTRACTS §§ 162 comment b, 167 (1979).

Therefore, we vacate the order denying the motion to confirm and remand to the trial court for additional proceedings necessary to resolve, on a sound evidentiary foundation, Lee & Harvey's claim of fraudulent inducement.

*So ordered.*